A00A0363, A00A0364. BARGE et al. v. ST. PAUL FIRE & MARINE INSURANCE COMPANY (two cases).
(535 SE2d 837)

MILLER, Judge.

The question in Case No. A00A0363 is whether the adding of a $20 million indemnity claim to a pending $400,000 arbitration proceeding arising out of the same indemnity agreement, which was added with the consent of the arbitration panel, required that a separate arbitration panel be appointed to hear the new claim. The rules stipulated by the arbitration agreement authorized the panel to consider all new claims, and for this reason we answer this question in the negative and affirm. The question in Case No. A00A0364 is whether ordering a supersedeas appellate bond where the court has confirmed the underlying arbitration award but has not entered a written monetary judgment based upon this award is error. We answer this question in the affirmative and vacate the supersedeas bond order.

St. Paul Fire & Marine Insurance Company bonded certain construction projects of Barge-Wagener, Inc. When Barge-Wagener experienced financial difficulties in completing these projects, St. Paul in May 1994 agreed to advance funds to assist if John Barge (a principal in Barge-Wagener) and his wife agreed to turn over their tax refunds — about $400,000 — to St. Paul and agreed to indemnify St. Paul for any costs or losses arising out of these money advances to Barge-Wagener. The parties agreed to arbitrate any disputes related to the agreement "in accordance with the Construction Arbitration Rules of the American Arbitration Association."

A dispute arose out of the tax refund turnover, resulting in St. Paul filing an arbitration demand with the AAA in January 1995. Per the AAA's November 1993 rules that were in effect at the time of the

arbitration demand (and in effect at the time the agreement was executed), a three-member panel was chosen. While the proceedings were pending, St. Paul moved in May 1996 to amend its arbitration demand to include a new claim for more than $20 million in losses it had incurred in advancing funds to complete the Barge-Wagener projects. The Barges objected, pointing to new rules of the AAA (effective April 1, 1996) which required that construction claims over $1 million be heard by specialized arbitrators from a particular roster. The Barges argued that because no panel member was on that roster, the panel lacked the power to hear the $20 million claim. Over the Barges' objection, the arbitration panel consented to hear the new claim as a part of the proceedings. In response to an inquiry and arguments by the Barges, the AAA itself confirmed that the panel had the authority to hear the new claim.

The Barges unsuccessfully sought to stay the arbitration proceedings.[1] The panel awarded St. Paul $21,748,310 plus interest. St. Paul immediately applied to the Superior Court of Fulton County to have the award confirmed, and the Barges counterclaimed to vacate it on the ground that the panel lacked the power to hear the $20 million claim. On the same ground, the Barges filed a federal court action to vacate the arbitration award and then moved the superior court to stay its proceeding in deference to the federal proceeding. Denying the stay, the superior court granted St. Paul's motion for summary judgment and confirmed the award, which order the Barges appeal in Case No. A00A0363. The court then ordered the Barges to post a supersedeas bond of $24 million, which order the Barges appeal in Case No. A00A0364 on the ground that the court never entered a judgment on the award.

## Case No. A00A0363

1. The only question in this appeal is whether the court erred in confirming the arbitration award.[2] The Barges contend that the award is invalid because under the Federal Arbitration Act the arbitrators had exceeded their powers,[3] and under the Georgia Arbitration Code they had overstepped their authority.[4]

Under both federal and Georgia law, arbitration is a matter of contract, meaning that arbitrators derive their authority to resolve disputes only from the parties' agreement.[5] Thus, the extent of that

---

[1] See *St. Paul Fire &c. Ins. Co. v. Barge*, 225 Ga. App. 392 (483 SE2d 883) (1997).

[2] At oral argument the Barges expressly abandoned their enumeration that the court erred in denying the stay.

[3] See 9 USC § 10 (a) (4).

[4] See OCGA § 9-9-13 (b) (3).

[5] *AT&T Technologies v. Communications Workers of America*, 475 U. S. 643, 648-649 (II)

authority depends on the language of the contract.[6]
The contract here provided:

> 18. *ARBITRATION.* Any and all disputes arising out of or in connection with execution or performance of this Agreement, including any breach thereof, shall be resolved through Arbitration in accordance with the Construction Arbitration Rules of the American Arbitration Association. The decision of the arbitrators shall be final and binding upon the parties and enforceable in any court having competent jurisdiction.

At the time the agreement was executed in May 1994, the November 1993 AAA rules were in effect, which provided in Rule 1:

> The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) or under its Construction Industry Arbitration Rules. These rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration . . . is received by the AAA.

In January 1995 when the AAA received St. Paul's arbitration demand, the November 1993 rules were still in effect. Under Rule 6 of these rules, an arbitration demand is a written notice of an intent to arbitrate, describing the nature of the dispute, the amount involved, the remedy sought, and the hearing locale requested. The party demanding arbitration files with the AAA three copies of the demand, three copies of the arbitration provisions of the contract, and a filing fee. Rule 8 contemplates that after the filing of a claim, either party may assert any new or different claim or counterclaim in the arbitration proceedings if made in writing and filed with the AAA (with a copy to the other party), and if consented to by any arbitrators who may have been appointed before the filing of the new claim. No provision exists to have claims exceeding $1 million heard by specialized arbitrators from a separate roster.

Since St. Paul's arbitration demand was made in January 1995, the November 1993 rules (incorporated as part of the arbitration agreement) applied per Rule 1 to the arbitration proceedings

---

(106 SC 1415, 89 LE2d 648) (1986); *North Augusta Assoc. v. 1815 Exchange*, 220 Ga. App. 790, 792 (2) (469 SE2d 759) (1996).

[6] See id.; *Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F3d 223, 225 (II) (4th Cir. 1994); *Szuts v. Dean Witter Reynolds, Inc.*, 931 F2d 830, 831 (11th Cir. 1991).

throughout their life. The April 1996 revisions simply never applied. The November 1993 rules therefore governed the motion by St. Paul in May 1996 to add the $20 million claim to the proceedings. There was no rule which required large claims to be heard by a special group of arbitrators. Rule 8 empowered the arbitration panel to consider the new claim as a part of the proceedings if it consented. The panel consented, and therefore the Barges' argument that the panel acted beyond its authority must fail.[7]

The Barges claim, however, that the motion to add the $20 million claim was itself a new demand for arbitration and that, therefore, the key date for determining which rules to apply was May 1996, by which time the April 1996 rules requiring that only certain arbitrators hear such large claims were in effect. When the Barges presented this argument to the arbitration panel and to the AAA, both tribunals apparently interpreted the rules to mean that the motion was merely an amendment to the January 1995 arbitration demand, and not a new arbitration demand in and of itself, for both tribunals concluded (1) that the November 1993 rules governed, (2) that the April 1996 rules regarding a special roster did not apply, and (3) that the arbitration panel had the power to determine the new claim.

The AAA's interpretation of its rules is entirely consistent with the language and structure of those rules. The filing to add the new claim was, in our view, not a demand for arbitration. Under Rule 6, arbitration demands initiate the proceedings, request a hearing locale, and are accompanied by a filing fee. This new claim did none of that but fell within the meaning of Rule 8, which empowers arbitrators in an ongoing proceeding to hear "any new or different claim or counterclaim" if they consent. Adding the new claim was more in the nature of an amendment to the arbitration demand; thus, in our first opinion regarding the stay in this case, we repeatedly referred to the new claim as an amendment to the arbitration demand.[8]

Moreover, the AAA's interpretation of the interplay of these two sets of rules must be accorded deference. Rule 52 of the November 1993 rules (incorporated by reference into the parties' agreement as per Rule 1) provides that the arbitration panel interprets and applies the rules insofar as they relate to the arbitration panel's powers and duties. The AAA itself interprets all other rules. Either the panel or a party may refer a "powers and duties" question to the AAA for final decision. Plainly stated, the parties agreed that the AAA's interpretation of the rules would be binding. "Given the parties' designation of

---

[7] This conclusion renders moot St. Paul's res judicata argument.

[8] *Barge*, supra, 225 Ga. App. at 393-395.

the AAA as the supervisory authority regarding the resolution of disputes under the agreement, the AAA's view of the meaning of its rules is of considerable significance."[9]

The arbitration panel did not exceed its powers nor overstep its authority in deciding the $20 million claim. Therefore, the trial court correctly confirmed the arbitration award.

## Case No. A00A0364

2. The Barges further appeal the court's order requiring them to post a $24 million bond to preserve the supersedeas effect of their main appeal. They argue that absent a money judgment on the order confirming the award, no supersedeas bond could be required. St. Paul counters that no separate money judgment was necessary, as the confirmation order allowed one to calculate the amount of the judgment based on the arbitration award found in the record.[10]

OCGA § 5-6-46 (a) authorizes a trial court to require a supersedeas bond "conditioned for the satisfaction of the judgment in full" if the appeal is unsuccessful, and where the judgment is for the recovery of money not otherwise secured, to fix the amount of the bond "as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay. . . ." Under this language, entry of a money judgment is an implied prerequisite to requiring a supersedeas bond in cases like this (i.e., cases involving only an award of money and involving no injunctive or other equitable relief); otherwise there would be nothing to execute upon, which execution is what the supersedeas is designed to prevent.

Here the arbitration award was not attached to the court's order confirming the award, and thus no one can discern the amount of the judgment without referring to a document extraneous to the order. "It is a fundamental rule that a judgment should be complete and certain in itself. The general rule is that judgments must be certain and definite as to the amount thereof."[11] As such, the confirmation order was not a certain and definite money judgment upon which an execution could operate, and thus there was no execution for a supersedeas to prevent. Accordingly, the court was without power to

---

[9] *York Research Corp. v. Landgarten*, 927 F2d 119, 123 (A) (2nd Cir. 1991); see *Diemaco v. Colt's Mfg. Co.*, 11 FSupp.2d 228, 232 (II) (A) (3) (D. Conn. 1998); cf. *Atlanta Journal &c. v. Babush*, 257 Ga. 790, 792 (2) (364 SE2d 560) (1988) (administrative agency's interpretation of its own rules should be accorded deference).

[10] This issue is not moot, for if certiorari were pursued on Case No. A00A0363 but not Case No. A00A0364, then the requirement of a supersedeas bond would still be in effect pending the final resolution of Case No. A00A0363.

[11] (Citations and punctuation omitted.) *Hutcheson v. Hutcheson*, 197 Ga. 603, 604 (30 SE2d 107) (1944).

require a supersedeas bond.

Moreover, the procedure to confirm an arbitration award specifically contemplates the entry of a separate judgment on the award. OCGA § 9-9-15 provides:

> (a) Upon confirmation of the award by the court, judgment shall be entered in the same manner as provided by Chapter 11 of this title and be enforced as any other judgment or decree.
> (b) The judgment roll shall consist of the following:
> (1) The agreement and each written extension of time within which to make the award;
> (2) The award;
> (3) A copy of the order confirming, modifying, or correcting the award; and
> (4) A copy of the judgment.

It is true that OCGA § 9-11-54 (a) provides that "[t]he term 'judgment,' as used in this chapter, includes a decree and any order from which an appeal lies." Thus, as so defined, "judgment" would include an order granting summary judgment, for such is directly appealable under OCGA § 9-11-56 (h). But with regard to judicial actions confirming arbitration awards, the judgment and the order confirming the award must be on separate documents, for OCGA § 9-9-15 (b) provides that the judgment roll shall consist of (1) a copy of the order confirming the award *and* (2) a copy of the judgment. Thus, there was no judgment here to support the supersedeas order.

Accordingly, we vacate the supersedeas bond order. Once a proper money judgment is entered, a supersedeas bond order would be available if an appeal is pending.

*Judgment affirmed in Case No. A00A0363. Judgment vacated in Case No. A00A0364. Pope, P. J., and Smith, P. J., concur.*

DECIDED JUNE 14, 2000 —
RECONSIDERATION DENIED JULY 14, 2000 

*Schreeder, Wheeler & Flint, David H. Flint, John A. Christy, Debbie A. Wilson,* for appellants.

*Wasson, Sours & Harris, Edward H. Wasson, Jr., W. Hensell Harris, Jr.,* for appellee.