A03A2304, A03A2305. ST. PAUL REINSURANCE COMPANY, LTD. v. ROSS et al.; and vice versa.

(596 SE2d 193)

ELDRIDGE, Judge.

This case, once appearing before the Supreme Court and now appearing before this Court for the fifth time, arises out of an early morning shooting on December 17, 1995, at the Gate Restaurant & Lounge, a nightclub located in Decatur. Random shots were fired in the midst of a melee in the club's parking lot, one of which hit appellee-plaintiff Ronald Ross in the stomach as he was attempting to leave the club. On March 25, 1997, Ross and his mother, appellee-plaintiff Shirley Ross, filed their complaint for damages against the club, Jeff Akhtar, and others, alleging, among other things, negligence for providing inadequate security, failure to warn, and lost services to Ms. Ross. The DeKalb County Superior Court entered its final judgment on the Rosses' negligence claims against Akhtar, who filed bankruptcy, by consent on June 29, 1999, awarding them $500,000. Akhtar's insurer, appellant-defendant St. Paul Reinsurance Company, Ltd., had informed Akhtar that it would neither defend him in the action nor indemnify him for any damages in light of the assault and battery exclusion of his reinsurance policy of insurance before the superior court entered its consent judgment. On August 11, 1999, the Rosses filed their affidavit of garnishment against St. Paul in the State Court of DeKalb County ("state court" or "garnishment court"). St. Paul timely answered, and on January 31, 2000, moved for summary judgment for want of insurance coverage, again relying upon the assault and battery exclusion of Akhtar's reinsurance policy. On June 13, 2000, the state court entered its amended order on garnishment,

find[ing] as follows: the damages for which the insured defendant, Jeff Akhtar, became liable in this case were not

excluded from the garnishee's insurance policy. THERE-FORE, IT IS HEREBY ORDERED AND ADJUDGED that plaintiffs' garnishment is GRANTED; Garnishee is directed to pay the limits of its policy pursuant to the judgment issued by [the superior court] on June 29, 1999.

We granted St. Paul's application for discretionary review on August 7, 2000, but remanded the case to the state court without reaching the merits upon finding that the Rosses "may lack standing to assert [a garnishment action]," citing *Metro. Property &c. Ins. Co. v. Crump*, 237 Ga. App. 96 (513 SE2d 33) (1999). On January 25, 2002, we dismissed St. Paul's direct appeal from the state court's order entered on December 13, 2001, which found standing in the Rosses to sue St. Paul as the garnishee reinsurance company — dismissal as proper because the underlying action was garnishment as to which an application for discretionary review was required and our remand order made no provision for refiling the appeal by notice of appeal. In addition to finding that the Rosses had standing to bring their action in garnishment "after an order remains unsatisfied," the state court's December 13 order and a corrected order thereon entered January 30, 2002, nunc pro tunc to June 13, 2000, stated, "What amount can be garnished and the 'limits' of the policy is unestablished. Any amounts above the 'policy limit' is [sic] not authorized by OCGA § 18-4-60."

On February 5, 2002, we reentered St. Paul's appeal from the state court's December 13, 2000 order on motion for reconsideration as in aid of our jurisdiction under Art. VI, Sec. I, Par. IV of the Georgia Constitution of 1983. The Rosses sought reconsideration, and on March 11, 2002, we vacated such order, citing *Davidson v. Callaway*, 274 Ga. 813 (559 SE2d 728) (2002). Therein, our Supreme Court held:

There is no exception to the requirements of OCGA § 5-6-35 that excuses an appellant from following the discretionary appeal procedures merely because the ruling being appealed was issued by the trial court on remand rather than on its first appearance in the trial court. In matters arising from [garnishment], the filing of a previous application for a discretionary appeal does not relieve an appellant from following the statutory appeal procedures for all subsequent issues sought to be appealed arising from that same matter.

(Footnote omitted.) Id. at 815. St. Paul's petition for certiorari was denied.

Following the second remand of the case, the Rosses sent St. Paul a letter dated July 15, 2002, demanding payment in the amount of $482,560.65. The next day, St. Paul responded by its letter refusing

payment and informing the Rosses that the state court's order of June 13, 2000, was not a final judgment upon which execution could issue for want of an amount certain stated therein.[1] On August 7, 2002, the Rosses filed a motion for contempt. The state court heard the motion on October 4, 2002, St. Paul, among other things, arguing no duty to pay in the absence of a final judgment. On April 18, 2003, the state court entered an order finding its June 13, 2000 "order to be 'final,' in that the 'policy limits' as referred to in that order does mean the limit of Garnishee's liability in that policy (or $300,000)." And, on May 14, 2003, by its order styled "Order on Motion for Plaintiff's Motion for Contempt," the state court ordered St. Paul to "pay instanter to [the Rosses] $300,000[ ] (the policy limits in question), $102,000 (interest from the date of the June 13, 2000 order to date) for a total sum of $402,000."

St. Paul filed its application for discretionary review on May 19, 2003, preliminarily arguing subject matter jurisdiction in this Court, the application as timely filed from the true final judgment of the state court, i.e., the state court's order of April 18, 2003, which, unlike its June 13, 2000 order, for the first time set out a sum certain ($300,000) as to its liability as garnishee. We granted St. Paul's application for discretionary review on June 4, 2003.

In Case No. A03A2304, St. Paul appeals, contending that the state court erred in finding standing in the Rosses to garnish the proceeds of reinsured Akhtar's St. Paul's reinsurance policy; erred in finding that its exclusion for injuries arising out of assault and battery did not foreclose coverage for the intentionally violent conduct of third parties; and erred in ordering post-judgment interest from June 13, 2000, in the absence of a final judgment on that date. In Case No. A03A2305, the Rosses contend that the state court erred by failing to order post-judgment interest from June 29, 1995, the date the superior court entered its consent judgment; and by ordering that post-judgment interest be calculated upon $300,000, the policy limit of Akhtar's St. Paul's reinsurance policy, rather than the 1995 consent judgment of the superior court awarding the Rosses

---

[1] The garnishment court's June 13, 2000 order left the amount of garnishment unresolved for stating its liability as Akhtar's "policy limits."

Every judgment must be certain and definite as to its amount. This element of certainty is present when the exact amount of the judgment may be ascertained by the subtraction of one named sum from another named sum, as provided *in* the judgment. *Moody v. Muscogee Manufacturing Co.*, 134 Ga. 721 (3) (68 SE 604) [(1910)].

(Punctuation omitted; emphasis supplied.) *Hutcheson v. Hutcheson,* 197 Ga. 603, 604 (30 SE2d 107) (1944); *Barge v. St. Paul Fire & Marine Ins. Co.*, 245 Ga. App. 112, 116 (2) (535 SE2d 837) (2000); compare *Adams v. Walker*, 59 Ga. 506-507 (1877) (A judgment "uncertain" for the failure to recite the party "for" and the party "against" may be made certain by reference to the pleadings; "[t]hat is certain which can be made certain.").

$500,000. In the main appeal, finding that the Rosses lacked standing to bring their garnishment action against St. Paul, we reverse the state court's orders to the contrary and dismiss the case. Consequently, we likewise dismiss the cross-appeal as moot. *Held*:

## Case Nos. A03A2304 and A03A2305

1. St. Paul contends that the state court erred in granting the Rosses standing to sue in garnishment for the Rosses' inability as judgment creditors to garnish tortfeasor Akhtar's unasserted and unassigned claim against his insurer St. Paul. It is undisputed that Akhtar has neither asserted nor assigned any claim against St. Paul as his insurer. St. Paul has denied coverage. Under these circumstances, St. Paul correctly argues that there is no standing in the Rosses as judgment creditors to bring a garnishment action against St. Paul based upon what is no more than a "potential" claim in tort or contract against it residing in its insured, judgment debtor Akhtar, this for want of a "fiduciary relationship or privity of contract existing between the insurer and a person injured by one of its policyholders." *Francis v. Newton*, 75 Ga. App. 341, 344 (1) (43 SE2d 282) (1947); *Southern Gen. Ins. Co. v. Ross*, 227 Ga. App. 191, 197, n. 2 (489 SE2d 53) (1997); *Metro. Property &c. Ins. Co. v. Crump*, supra at 97. Any potential tort or contract action against St. Paul arises only if it in bad faith denies coverage or, in the event there is coverage, refuses to settle within policy limits. If there is insurance coverage, then the insured's contract right of indemnification could be assigned, which has not been adjudicated in a proper jurisdiction.

Further, until the Rosses and St. Paul litigate in a proper jurisdiction the coverage question, there can be no standing based upon the contract coverage. Garnishment is not the proper place to determine such issue of liability between St. Paul and its insured, Akhtar, because it is a collateral issue beyond the scope of garnishment which requires a fixed and certain debt. See *Goodyear Tire & Rubber Co. v. New Amsterdam Cas. Co.*, 101 Ga. App. 577 (1) (114 SE2d 546) (1960) (" 'While ancillary to the main action, a garnishment proceeding is a distinct suit against a separate party, and for an entirely new cause of action. In the main case the question is whether the defendant is indebted to the plaintiff. In the garnishment suit, the question is whether the garnishee is indebted to the defendant.' [Cit.]"). Moreover, "[a]ll debts owed by the garnishee to the defendant at the time of service of the summons of garnishment upon the garnishee and all debts accruing from the garnishee to the defendant from the date of service to the date of the garnishee's answer shall be subject to process of garnishment." OCGA § 18-4-20 (b); *Goodyear Tire & Rubber Co. v. New Amsterdam Cas. Co.*, supra at 577-578 (1).

The alleged debt in the instant case, i.e., insurance coverage, is in dispute and thus is not a debt until liability has been adjudicated. If there is no debt because the insurer St. Paul has not been adjudicated liable to its insured Akhtar,[2] there is no standing to bring the garnishment action. "If there is no debt owing by the garnishee to the principal debtor, there is no basis for a garnishment." Id. at 578. Our decision in *Hodges v. Ocean Accident & Guarantee Corp.*, 66 Ga. App. 431 (18 SE2d 28) (1941), relied on by the Rosses in asserting standing to garnish St. Paul erroneously arguing the reinsurance policy at issue as a contract to pay any liability rather than to indemnify for loss, holds nothing to the contrary. Id. at 433-434. Therefore, the garnishment court's orders finding standing to sue in the Rosses, entered on December 13, 2001, and January 30, 2002, are reversed and the case is dismissed.

2. In light of our disposition of Division 1, we do not reach St. Paul's remaining claims of error in the main appeal and dismiss the Rosses' cross-appeal, the latter as moot for our dismissal of their garnishment case. "If an appellant or cross-appellant [will] receive no benefit by reversal of the case, his appeal is moot. *Chaplin v. State*, 141 Ga. App. 788, 789 (1) (234 SE2d 330) (1977)." (Citations and punctuation omitted.) *Kubler v. Goerg*, 197 Ga. App. 667, 671 (5) (399 SE2d 229) (1990); compare *Johnson & Harber Constr. Co. v. Bing*, 220 Ga. App. 179, 180 (1) (469 SE2d 697) (1996) (appeal not moot where appellant or cross-appellant benefitted by reversal).

*Judgment reversed in Case No. A03A2304. Appeal dismissed as moot in Case No. A03A2305. Johnson, P. J., Blackburn, P. J., Ruffin, P. J., and Phipps, J., concur. Mikell and Ellington, JJ., dissent.*

MIKELL, Judge, dissenting.

I respectfully dissent because I believe that the garnishment action is the proper vehicle for deciding whether the insurance company is indebted to the bankrupt judgment debtor, which is another way of saying that the garnishment action is where the coverage issue should be decided. Footnote 2 suggests that the injured plaintiff might establish the liability of the insurance company by "receipt of an assignment of claims." But creditors cannot depend on the cooperation in good faith by the debtor in executing voluntarily such an assignment. The footnote also suggests a declaratory judgment action. Although controlling Supreme Court precedent does allow suits for a declaratory judgment by an insured, declaratory judgments were traditionally reserved for situations in which a party

---

[2] The Rosses might establish St. Paul's liability to its insured, tortfeasor Akhtar, upon their receipt of an assignment of claim under his policy of insurance or by their suit for declaratory judgment against St. Paul.

was uncertain of his rights. Those precedents do not make declaratory judgments the exclusive remedy. Garnishment is a clean, efficient method for deciding coverage, especially when, as here, the issue is one of law: does the assault and battery exclusion apply?

Because I believe the Rosses do have standing, the other issues in the appeal would not be moot.

I am authorized to state that Judge Ellington joins in this dissent.

DECIDED FEBRUARY 20, 2004 —
RECONSIDERATION DENIED MARCH 4, 2004 —

*Goetz, Allen & Zahler, Charles M. Goetz, Jr., David A. Webster,* for appellant.
*Willace D. MaGee,* for appellees.