A03A2304, A03A2305. ST. PAUL REINSURANCE COMPANY, LTD. v. ROSS et al.; and vice versa.
(622 SE2d 374)

BERNES, Judge.

In *Ross v. St. Paul Reinsurance Co.*, 279 Ga. 92 (610 SE2d 57) (2005), the Supreme Court of Georgia reversed our previous decision in these consolidated appeals arising out of a garnishment action brought by Shirley and Ronald Ross against St. Paul Reinsurance Company, Ltd. in the State Court of DeKalb County. See *St. Paul Reinsurance Co. v. Ross*, 266 Ga. App. 75 (596 SE2d 193) (2004). In reversing this Court, the Supreme Court held that a tort judgment creditor has standing to bring a garnishment action seeking recovery of all or part of the judgment from the insurer of the tort judgment debtor. Accordingly, our previous opinion and judgment is vacated and set aside, and the decision of the Supreme Court is hereby made the decision of this Court as to the issue of standing. However, "[t]he

---

issues submitted by the remaining enumerations of error which were rendered moot by our previous decision are reopened by the decision of the Supreme Court." *Stevens v. Wakefield*, 163 Ga. App. 40 (292 SE2d 516) (1982). See also *St. Paul Fire &c. Ins. Co. v. Clark*, 255 Ga. App. 14, 19 (2) (c) (566 SE2d 2) (2002) (en banc). We address the remaining enumerations below, namely, whether the trial court erred (1) in concluding that the liability insurance policy issued to Jeff Akhtar did not exclude from coverage the Rosses' claim predicated on the shooting of Ronald Ross and (2) in calculating post-judgment interest.[1] We affirm the trial court's ruling as to the first issue, but reverse as to the second.

The basic facts and history surrounding this garnishment action, which has been before us on multiple occasions, are as follows.[2] On May 5, 1998, the Rosses brought a personal injury action against Akhtar for, inter alia, negligent failure to prevent physical injury to Ronald Ross after he was shot by a stray bullet in the parking lot of a nightclub owned by Akhtar. After the lawsuit commenced, Akhtar declared bankruptcy, and the Rosses and Akhtar agreed to entry of a consent judgment. Consequently, on June 29, 1999, the trial court entered a final judgment by consent on the Rosses' negligence claim against Akhtar in the amount of $500,000 in compensatory damages.[3]

Akhtar and his nightclub were insured to the extent of $300,000 under a liability insurance policy issued by St. Paul Reinsurance Company. However, St. Paul denied coverage for the shooting incident and informed Akhtar that it would not defend him in the underlying personal injury action or indemnify him for any damages recovered by the Rosses based on an assault and battery exclusion

---

[1] The Rosses contend that this Court lacks jurisdiction to address any unresolved enumerations of error because the Supreme Court reversed our prior opinion without specifically directing a "remand" of the case. But, the word "remand" is not talismanic. See, e.g., *MOM Corp. v. Chattahoochee Bank*, 203 Ga. App. 847 (1) (418 SE2d 74) (1992) (holding that "the mere failure of the appellate court expressly to direct a 'remand' " does not preclude the court below from proceeding with the case on remand). After the Supreme Court has reversed this Court on one or more issues, it is the responsibility of this Court then to determine the impact of the reversal on our previous decision and to resolve any reopened issues. See *Shadix v. Carroll County*, 274 Ga. 560, 563-564 (1) (554 SE2d 465) (2001).

[2] We have omitted some of the procedural history to avoid complicating matters further. That history is laid out in greater detail in *St. Paul Reinsurance Co.*, 266 Ga. App. at 75-78.

[3] The consent judgment did not contain any recitals or otherwise specifically set forth the factual predicate for Akhtar's negligence. Rather, the consent judgment simply stated:

> COMES NOW Shirley Ross, Ronald Ross, and Jeff Akhtar and consent to the entry of final judgment by the Court on negligence claims against Defendant Jeff Akhtar only in the amount of $500,000 as compensatory damages.
>
> As there is no just reason for delay, this Court hereby and expressly directs entry of final judgment against Jeff Akhtar and awards $500,000 compensatory damages to Plaintiffs.

contained in the liability policy. St. Paul did not file a declaratory judgment action to resolve the coverage issue during the pendency of the personal injury action.

Subsequently, on August 11, 1999, the Rosses brought the instant garnishment action against St. Paul, contending that St. Paul was indebted to them on the $500,000 consent judgment because the shooting was covered by the liability policy. St. Paul answered, denying indebtedness, and filed a motion to dismiss, or alternatively, a motion for summary judgment,[4] on the ground that the shooting arose out of an assault and battery and, therefore, was excluded from liability coverage. The Rosses filed a traverse to St. Paul's answer. On February 18, 2000, the trial court held an evidentiary hearing on St. Paul's motion for summary judgment and the Rosses' traverse.

On June 13, 2000, the trial court entered an amended order denying St. Paul's motion for summary judgment and granting the Rosses' traverse, finding that "the damages for which the insured defendant, Jeff Akhtar, became liable in this case were not excluded from the garnishee's insurance policy." However, the June 13, 2000 Order did not spell out the dollar amount that was subject to garnishment. On April 18, 2003, the trial court entered a new order stating that it had reconsidered its June 13, 2000 Order and had "found that order to be final." The trial court went on to state for the first time in an order that the Rosses were entitled to collect $300,000 from St. Paul, the liability policy limit. The trial court subsequently ordered post-judgment interest on the $300,000, running from June 13, 2000.

On May 19, 2003, St. Paul filed an application for discretionary review with this Court, arguing that it had timely appealed from the true final judgment entered by the trial court on April 18, 2003. We granted St. Paul's discretionary application. The Rosses filed a motion to dismiss, arguing that St. Paul's application was untimely because final judgment had been entered on June 13, 2000, and St. Paul was estopped from arguing otherwise. We denied the Rosses' motion to dismiss.

On appeal, St. Paul argued in Case No. A03A2304 that the trial court erred by (a) holding that the Rosses had standing to pursue St. Paul in a garnishment action; (b) finding that the assault and battery exclusion did not bar coverage of the shooting; and (c) awarding post-judgment interest running from June 13, 2000, since no final judgment had been entered on that date. The Rosses cross-appealed in Case No. A03A2305, contending that the trial court erred in its

[4] St. Paul's combined motion is referred to hereinafter as its "motion for summary judgment."

award of interest because (a) interest should have run from entry of the June 29, 1999 consent judgment in the underlying personal injury action, and (b) interest should have been calculated on the amount of the consent judgment ($500,000), not the liability policy limit ($300,000). The appeal and cross-appeal were consolidated before this Court.

With two panel members dissenting, this Court held that the Rosses did not have standing to pursue St. Paul in a garnishment action and, therefore, that the remaining enumerations of error set forth in the appeal and cross-appeal were moot. *St. Paul Reinsurance Co.*, 266 Ga. App. at 78-79. However, in a footnote, this Court did reiterate that the June 13, 2000 Order did not constitute a final judgment because it "left the amount of garnishment unresolved." Id. at 77, n. 1.

The Supreme Court granted certiorari and stated that it was particularly concerned with two questions: whether this Court had jurisdiction to hear St. Paul's application for discretionary review, and whether the Rosses had standing to bring a garnishment action against St. Paul. In its subsequent opinion, the Supreme Court remained silent on the jurisdictional issue and discussed only whether the Rosses had standing, expressly reversing this Court on that issue. See *Ross*, 279 Ga. at 92-94.

We now address the remaining enumerations of error set forth in St. Paul's appeal and the Rosses' cross-appeal that have been re-opened by the Supreme Court's decision. In particular, we consider whether the trial court erred in its decision that the assault and battery exclusion did not bar coverage of the shooting under the liability policy and in its award of post-judgment interest.[5]

1. St. Paul argues that the trial court erred in concluding that the assault and battery exclusion did not bar coverage of Ross' shooting under the liability policy.[6] The trial court reached its conclusion in the context of an evidentiary hearing on St. Paul's motion for summary judgment and the Rosses' traverse. See *Jefferson Ins. Co. &c. v. Dunn*,

---

[5] Following the Supreme Court's reversal of this Court, St. Paul and the Rosses filed supplemental briefs. In those briefs, the parties argue over jurisdictional issues and over whether the trial court erred by finding that the assault and battery exclusion did not apply in this case. Neither party addresses the enumerations of error pertaining to post-judgment interest. Arguably, the failure to renew these enumerations in their supplemental briefs has waived consideration of the issue of post-judgment interest on remand. See *Clark*, 255 Ga. App. at 20 (2) (d)-(e). However, "out of an abundance of caution and in an effort to bring resolution to this case, we will address the remaining enumerations" relating to post-judgment interest. Id. at 20 (2) (e).

[6] The assault and battery exclusion provided: "Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy excludes claims arising out of Assault & Battery, whether caused by or at the direction of, the insured, his employees, patrons of [sic] any cause whatever."

269 Ga. 213, 215 (496 SE2d 696) (1998) (discussing test for determining whether insurance policy exclusion applies); *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 714 (502 SE2d 514) (1998) (same). Significantly, the transcript of the evidentiary hearing appears nowhere in the record. Nor has St. Paul utilized any of the alternative procedures set forth in OCGA § 5-6-41 for circumstances where a transcript is unavailable.

> Without access to the hearing transcript, we cannot determine whether evidentiary submissions, stipulations, or statements in place by counsel were tendered at the hearing. Without this knowledge, we cannot adequately address [St. Paul's claim of error] on appeal. The burden is on an appellant to show error by the record, and when a portion of the record which is necessary for our determination of one or more appellate issues is not before the court, the trial court's express or implicit ruling as to those issues must be affirmed.

*Gill v. B & R Intl.*, 234 Ga. App. 528, 531 (1) (c) (507 SE2d 477) (1998). "Without a transcript of the testimony below, we cannot review the basis for the [trial court's] finding[s]." *Sampson v. Intellectual Technologies*, 242 Ga. App. 493, 494 (2) (529 SE2d 921) (2000). Thus, we are unable to review St. Paul's claim of error. *Lott v. Arrington & Hollowell, P.C.*, 258 Ga. App. 51, 53-54 (1) (572 SE2d 664) (2002).

Nevertheless, quoting *Bates v. Guaranty Nat. Ins. Co.*, 223 Ga. App. 11, 14 (2) (476 SE2d 797) (1996), St. Paul argues that the hearing transcript is not necessary because "the allegations of the complaint [brought against the insured] provide the basis for determining whether liability exists under the terms of the insurance policy." But, *Bates* does not hold or suggest that the allegations in the underlying tort complaint brought against the insured provide the *sole* basis for determining whether an insurance policy exclusion applies. Rather, *Bates* simply holds that an insurer can meet its initial burden of showing that a policy exclusion applies by relying on the allegations of the underlying complaint; the burden then shifts to the party seeking coverage under the policy to come forward with *other* evidence creating a genuine issue of fact over whether the exclusion is applicable. Id. Thus, the fact that the record contains a copy of the Rosses' underlying personal injury complaint does not negate the need for an evidentiary hearing transcript, since the analysis of whether the assault and battery exclusion applies begins, but does not end, with that complaint.

However, St. Paul emphasizes that the burden-shifting mechanism discussed in *Bates* arose in a case where the *insured*, claiming

coverage under the insurance policy, brought suit against the insurer. St. Paul argues that while it may be true that "an insured suing its own insurer is entitled to contest the complaint [filed] in the underlying action," the personal injury plaintiff who sued the insured in the underlying tort action should not be permitted to take a position inconsistent with the allegations in his own tort complaint when he later sues the insurer in garnishment. In this regard, St. Paul contends that the specific allegations in the Rosses' complaint in the underlying personal injury suit brought against Akhtar clearly come within the assault and battery exclusion, and so the Rosses should be bound by those allegations in the garnishment action.

Pretermitting whether the specific allegations in the Rosses' complaint in the underlying personal injury suit can only be construed as coming within the assault and battery exclusion, we reject St. Paul's attempt to distinguish *Bates*. Although we are sympathetic to St. Paul's position, binding precedent of this Court holds to the contrary. In *Nichols v. Ocean Accident &c. Corp.*, 70 Ga. App. 169 (2) (27 SE2d 764) (1943), we held it permissible for the plaintiff in a tort action to take a position in a garnishment suit later brought against the insurer that was inconsistent with the plaintiff's former allegations in the tort action, since the insurer, who had not been a party to the underlying action, failed to show that it had been unfairly prejudiced by the plaintiff's inconsistency.

St. Paul, the insurer in this case, has likewise failed to show that it was unfairly prejudiced by alleged inconsistencies between the Rosses' position in the garnishment action and the allegations contained in their personal injury complaint against Akhtar. St. Paul could have resolved the coverage issue during the pendency of the personal injury suit, and thus avoided the possibility of being faced with an inconsistent position in a later-filed garnishment suit, by seeking a stay of the personal injury suit and filing a declaratory judgment action. See *Richmond v. Ga. Farm &c. Ins. Co.*, 140 Ga. App. 215, 219 (1) (231 SE2d 245) (1976); *Yost v. Southeastern Fidelity Ins. Co.*, 255 Ga. 179, 179-180 (336 SE2d 248) (1985); *Georgetown Mtg. v. OHIC Ins. Co.*, 267 Ga. App. 318, 319 (599 SE2d 282) (2004).

More importantly, St. Paul had a full and fair opportunity to contest the issue of insurance coverage in the garnishment action. See *Ross*, 279 Ga. at 94 (noting that a garnishment action "is a process in which the insurer is well protected and may assert that there is no coverage under the policy"). Furthermore, regardless of whether the Rosses asserted an inconsistent position in the garnishment action, St. Paul could still rely on the allegations of the Rosses' personal injury complaint to satisfy its burden of showing the applicability of the assault and battery exclusion and to shift the evidentiary burden to the Rosses. See *Bates*, 223 Ga. App. at 14 (2). For these reasons, St.

Paul cannot point to any unfair prejudice it has suffered as a result of the Rosses' purportedly inconsistent positions. Thus, we reject St. Paul's argument that the Rosses were bound in the garnishment action to the specific allegations contained in their underlying personal injury complaint, and St. Paul's corollary claim that the transcript of the evidentiary hearing is irrelevant.[7]

St. Paul also argues that the evidentiary hearing transcript is unnecessary because the record contains the affidavit of Ronald Ross, the only witness who testified at the evidentiary hearing. However, St. Paul overlooks the fact that in addition to the live testimony of Ross, there may have been "stipulations[ ] or statements in place by counsel [that] were tendered at the hearing" of which we are unaware that also would affect our review of the case. *Gill*, 234 Ga. App. at 531 (1) (c). Moreover, nothing prevents a witness from taking the stand at an evidentiary hearing on a traverse and elaborating on his or her affidavit, or in fact contradicting all or part of it.[8] Hence, the mere presence of a witness' affidavit in the record does not solve the problem created by the absence of an evidentiary hearing transcript. See *Hipple v. Simpson Paper Co.*, 234 Ga. App. 516, 518 (3) (507 SE2d 156) (1998) (pointing out that citation to affidavit on appeal "cannot be used to cure the absence of a transcript of proceedings for . . . appellate review") (citation omitted).

Accordingly, we conclude that a transcript of the evidentiary hearing conducted on St. Paul's motion for summary judgment and the Rosses' traverse is essential for resolving whether the assault and battery exclusion applied to the shooting. Because that transcript is absent from the record, we "must presume that the evidence authorized the judgment" entered by the trial court, and are constrained to uphold the trial court's conclusion that the assault and battery

---

[7] We note that St. Paul has not contended in either this Court or the trial court that entry of the consent judgment in the personal injury action collaterally estopped the Rosses from litigating the factual issues surrounding the shooting in the garnishment action. As such, St. Paul has waived any collateral estoppel argument it might have made in this litigation. *Nodvin v. West*, 197 Ga. App. 92, 95 (3) (a) (397 SE2d 581) (1990).

[8] An affidavit also can be contradicted as part of an evidentiary hearing held on a summary judgment motion:

The rule in Georgia is that if, on motion for summary judgment, a party offers self-contradictory testimony, the trial court must eliminate the favorable portions of the contradictory testimony *unless a reasonable explanation is offered for the contradiction; if a contradiction is explained, then the issue is merely one of credibility of the witness.* [*Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).]

(Emphasis supplied.) *Mitchell Family Dev. Co. v. Universal Textile &c.*, 268 Ga. App. 869, 872 (3) (602 SE2d 878) (2004).

exclusion did not bar coverage of the shooting under the facts of this case. *Sherard v. Aldridge*, 251 Ga. App. 445, 447 (1) (554 SE2d 590) (2001).

2. Both parties also contend that the trial court erred in its award of post-judgment interest.[9] As previously noted, the trial court awarded the Rosses post-judgment interest on the $300,000 subject to garnishment starting on June 13, 2000. St. Paul argues that the trial court's award of post-judgment interest should have started to run from April 18, 2003, not June 13, 2000, because no final judgment was entered in the garnishment action until April 18, 2003. We agree.

OCGA § 7-4-12 (a) states that "[a]ll judgments in this state shall bear annual interest upon the principal amount recovered." "This post-judgment interest is due from the date the judgment is entered until the date the judgment is paid." (Citation and punctuation omitted.) *Great Southern Midway v. Hughes*, 223 Ga. App. 643 (478 SE2d 400) (1996). Accordingly, post-judgment interest should have begun to accrue on the date that final judgment was entered in the garnishment action. The Rosses contend that final judgment was entered on June 13, 2000, while St. Paul argues that final judgment was entered on April 18, 2003.

As the procedural history set forth above makes clear, in denying the Rosses' motion to dismiss, we rejected the Rosses' argument that the trial court's June 13, 2000 Order (rather than the April 18, 2003 Order) should be treated as the entry of final judgment in this case. We reiterated our conclusion in a footnote of our prior opinion. See *St. Paul Reinsurance Co.*, 266 Ga. App. at 77, n. 1. On writ of certiorari, the Supreme Court of Georgia did not reverse this Court's conclusions on the final judgment issue, and so we conclude that our prior determination remains binding. See *Shadix*, 274 Ga. at 563 (1), n. 13. "Although the 'law of the case' rule has been statutorily abolished, any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." (Citation and punctuation omitted.) *Hardwick v. Williams*, 272 Ga. App. 680, 681-682 (2) (a) (613 SE2d 215) (2005). Accordingly, we conclude that the trial court erred by treating June 13, 2000, as the date of final judgment upon which post-judgment interest would begin to accrue. Instead, the trial court should have granted post-judgment interest starting on April 18, 2003, the day that the true final judgment was entered in the garnishment action.

---

[9] Because the parties' arguments concerning post-judgment interest are referenced in both St. Paul's appeal and the Rosses' cross-appeal, we address all the arguments on this issue together in Division 2 of this opinion.

The Rosses argue that, irrespective of when final judgment was entered in the garnishment action, the trial court's award of post-judgment interest was improper. They contend that under OCGA § 7-4-12, the award of post-judgment interest should have started to run from the consent judgment entered on June 29, 1999, *in the underlying personal injury action brought against Akhtar*, and that interest should have been calculated on the amount of that consent judgment ($500,000).

In making their argument, the Rosses have conflated two separate potential awards of interest. First, there is the post-judgment interest that automatically accrues on the final judgment entered in the garnishment action up to the point of actual disbursement of the garnished funds. We already have discussed this type of interest in the preceding paragraphs of this division.

Second, there is the entirely separate award of post-judgment interest that automatically began accruing *on the underlying tort judgment* on the date final judgment was entered in *that* case pursuant to OCGA § 7-4-12 (c), and which a tort judgment creditor may later seek to garnish along with the principal judgment debt owed. See *Great Southern Midway*, 223 Ga. App. at 643-644.[10] Indeed, when a claim for this type of interest arises in a later-filed garnishment action, it is more akin to a request for *pre-judgment* interest because the judgment creditor seeks to recover interest running from *before* the trial court enters judgment in the garnishment action and, in fact, from *before* the garnishment action was even commenced.

However, in the present case, the affidavit of garnishment filed by the Rosses only alleged that St. Paul was indebted to them for the amount of the consent judgment, not for any interest that had and was automatically accruing on that earlier judgment. Compare *Lott v. Arrington & Hollowell, P.C.*, 258 Ga. App. at 52 (affidavit of garnishment filed by judgment creditor explicitly stated that gar-nishee was indebted to creditor for judgment amount plus accrued interest). "[G]arnishment proceedings are governed by the pleading and practice provisions of the Civil Practice Act. OCGA § 18-4-1." *Horizon Credit Corp. v. Lanier Bank & Trust Co.*, 220 Ga. App. 362, 363 (1) (469 SE2d 452) (1996). Under the Civil Practice Act, a party's

---

[10] If the tort judgment creditor obtains a garnishment judgment authorizing him to garnish both the principal sum owed on the underlying tort judgment plus the interest that had automatically accrued on that underlying judgment, the post-judgment interest in turn awarded *on the garnishment judgment* accrues only upon the principal sum owed. "No part of the [underlying] judgment shall bear interest except the principal which is due on the original debt." *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 181 (4) (438 SE2d 406) (1993), quoting OCGA § 9-12-10. "[I]nterest on interest" is prohibited. (Citation omitted.) Id.

complaint or amendments thereto must put an opponent on notice of the claims and relief sought; otherwise, such claims and relief are waived. See, e.g., *Uniflex Corp. v. Saxon*, 198 Ga. App. 445 (2) (402 SE2d 67) (1991); *First Bank & Trust Co. v. Ins. Svc. Assn.*, 154 Ga. App. 697, 699 (4) (269 SE2d 527) (1980). Because the Rosses failed to timely put St. Paul on notice that they were seeking to garnish the interest accruing on the underlying consent judgment, their claim for that interest has been waived. See OCGA § 18-4-61 (affidavit of garnishment must set forth "the amount claimed to be due on the judgment").[11]

It is true that when the parties eventually joined issue on how much interest should be awarded in the garnishment action, the Rosses requested that the trial court permit them to recover the interest that had accrued on the underlying consent judgment. But, St. Paul duly objected that the request had come too late, and the Rosses thereafter did not follow up and seek leave to amend their affidavit to include a demand for the interest. See *Horizon Credit Corp.*, 220 Ga. App. at 363 (1) ("The affidavit filed in a garnishment action is a pleading and can be amended as provided under both the Civil Practice Act and OCGA § 18-4-3. . . .") (citation omitted). Because St. Paul "made a clear objection to the . . . additional claims, it cannot be said that these claims were tried with [St. Paul's] express or implied consent" under OCGA § 9-11-15 (b). *Burger King Corp. v. Garrick*, 149 Ga. App. 186, 188 (253 SE2d 852) (1979). See also *Bland v. Graham*, 249 Ga. App. 856, 857 (549 SE2d 809) (2001).[12]

For the foregoing reasons, we affirm the trial court's ruling that the assault and battery exclusion contained in the liability policy did not bar coverage of the shooting of Ronald Ross. However, we reverse the trial court's award of post-judgment interest, and we remand with instruction to the trial court to recalculate the award of interest running on the $300,000 garnishment judgment from April 18, 2003.

*Judgment affirmed in part and reversed in part, and case remanded with instruction. Ruffin, C. J., Johnson, P. J., Blackburn, P. J., Ellington, Phipps and Mikell, JJ., concur.*

---

[11] Thus, the present case is distinguishable from *Great Southern Midway*, 223 Ga. App. 643. In that case, this Court did not address the issue of whether the garnishee had been put on proper notice that the judgment creditor would be seeking to garnish the interest that had accrued on the underlying judgment.

[12] Because the Rosses waived their claim to recover the interest that had accrued on the underlying consent judgment, we do not reach the substantive issue of whether they would have been entitled to recover that interest from St. Paul based on the terms of the insurance policy or on some other basis.

Decided September 28, 2005 —
Reconsideration denied October 31, 2005 — 

*Goetz, Allen & Zahler, Charles M. Goetz, Jr., David A. Webster,* for appellant:

*Willace D. MaGee,* for appellees.