**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2023**

# In the Court of Appeals of Georgia

A23A0304. JOE AND JAMES PROPERTIES, LLC v. CITY OF
    ATLANTA.

A23A0822. JOE AND JAMES PROPERTIES, LLC v. CITY OF
    ATLANTA.

MERCIER, Judge.

In order to complete the Upper Proctor Creek Capacity Relief Project," ("the Project"), the City of Atlanta ("the City") sought to acquire property located at 587 Tyler Street NW in Atlanta, Georgia ("the Property"). Following failed negotiations with the Property owner, Joe and James Properties, LLC, ("Joe and James"), the City filed a petition for condemnation in rem. The trial court granted the petition. The matter proceeded to trial on the issue of value, and a jury awarded Joe and James $435,000 in compensation for the Property and a judgment was entered. Thereafter, Joe and James filed a motion for attorney fees, which the trial court denied.

Joe and James filed these joint appeals. In Case No. A23A0304, Joe and James argues that the trial court erred by denying its motion to set aside the petition for condemnation, and by limiting post-judgment interest to thirty days from the date of judgment. In Case No. A23A0822, Joe and James argue that the trial court erred by denying its motion for attorney fees pursuant to OCGA § 9-15-14.[1]

Case No. A23A0304

"In condemnation proceedings, we will affirm the superior court's factual findings if there is any evidence to support them. As to questions of law, however, we owe no deference to the superior court and apply the plain legal error standard of review." *Morgan County v. Gay*, 352 Ga. App. 555, 556 (834 SE2d 576) (2019) (citations omitted).

So viewed, the evidence shows the following. The City sought to acquire the Property for the Project and engaged Jade Wiles, a real estate agent, to help acquire the Property. Wiles contacted James Arpad, the principal owner of Joe & James, on November 30, 2016. Wiles "informed Arpad that the Property was needed for the Project" and that "the City was performing appraisals of the properties needed for the

---

[1] In Case No. A23A0822, we granted Joe and James's application for discretionary review.

Project, including the Property." Arpad responded that Giles "could perform the City's appraisal but [Arpad] would not cooperate." Arpad indicated that "he was not interested in selling the Property" or in the results of any appraisal, and that any offer of less than $500,000, which he subsequently raised to $1,000,000, would be "ridiculous and insulting." Giles told Arpad that, because he refused to cooperate, "the City would have an exterior appraisal performed and [Giles] would let [Arpad] know the results of that appraisal."

Gordia Ammons, Jr. conducted an exterior appraisal of the Property on December 15, 2016, and determined that the fair market value of the property was $85,000. The City sent an offer of $85,000 to Joe and James on May 30, 2017, and included an agreement for the purchase and sale of real property, but failed to include the appraisal report. The City sent a second offer on July 25, 2017, wherein it stated that the property had a fair market value of $85,000, but it also offered an additional 20 percent and $2,725 in moving expenses, for a total of $104,725. Again, the City failed to send a copy of the appraisal with its letter. The City received no response to either offer. The City later forwarded a copy of the appraisal to Joe and James to "its

last known address as shown by the Secretary of State of Georgia at its official business address" but the correspondence was returned as undeliverable.[2]

The City then filed a petition for condemnation in rem in March, 2018 and the underlying litigation took place.

1. Joe and James contends that the trial court erred by denying its motion to set aside the petition for condemnation, arguing that the City's failure to provide the appraisal with its first and second offers violated OCGA § 22-1-9 (2) and (3).

OCGA § 22-1-9 provides policies and practices guiding exercises of eminent domain, and states that:

> In order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for property owners, and to promote public confidence in land acquisition practices, all condemnations and potential condemnations shall, to the greatest extent practicable, be guided by the following policies and practices: . . .

Relevant to the underlying litigation, two such practices, codified at OCGA § 22-1-9 (2) and (3), state as follows:

---

[2] The parties have failed to point to the date the appraisal was sent in the appellate record, but the trial court found that it was sent three months after the final offer, which would have been in October, 2017.

(2) Where the condemning authority seeks to obtain a fee simple interest in real property, real property shall be appraised before the initiation of negotiations, and the owner or his or her designated representatives shall be given an opportunity to accompany the appraiser during his or her inspection of the property, except that the condemning authority may, by law, rule, regulation, or ordinance, prescribe a procedure to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value;

(3) Before the initiation of negotiations for fee simple interest for real property, the condemning authority shall establish an amount which it believes to be just compensation and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the condemning authority's independent appraisal of the fair market value of such property. The condemning authority shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount it established as just compensation. Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated. The condemning authority shall consider alternative sites suggested by the owner of the property as part of the compensation offered[.]

"[C]ompliance with the provisions of [OCGA §] 22-1-9 is required to the extent that compliance is 'practicable.'" *City of Marietta v. Summerour*, 302 Ga. 645, 656 (2) (807 SE2d 324) (2017).

5

Wiles, on behalf of the City, contacted Joe and James about the City's need for the Property for the Project in November 2016. Despite Arpad's refusal to cooperate in an appraisal, the City conducted an external appraisal and thereafter sent two separate offers to purchase the Property. The trial court found that Joe and James "refused to cooperate in the appraisal process" and then, despite the refusal, the City conducted an appraisal without Joe and James's participation and made an offer. While Arpad averred that he "did not receive a request to cooperate with an appraiser" for the Property prior to the initial offer, there is evidence in Wiles's affidavit to support the trial court's finding, and thus we will affirm the finding. As there is evidence in the record that the City obtained an appraisal, to the extent possible without the cooperation of Joe and James, prior to issuing an offer we do not find that the City violated the guiding practices of OCGA § 22-1-9 (2).

In examining the requirements of OCGA § 22-1-9 (3), that the condemning authority must issue a prompt offer "[b]efore the initiation of negotiations for fee simple interest for real property," the Supreme Court determined that "the provision at issue is best understood to ensure that the landowner receives enough accurate appraisal information to enable a fair negotiation of the property sale." *City of Marietta*, 302 Ga. at 657 (3). In *City of Marietta,* the city failed to send a summary

6

of the basis for the appraisal amount until years after sending an initial offer. Id. The city claimed that it withheld its appraisal summary because it sought to acquire several neighboring parcels, and it wanted to preclude the landowners from comparing the basis for the respective appraisals. Id. at 658 (3). However, as the Supreme Court pointed out, "[t]here was nothing to stop the owners of the neighboring parcels from comparing *offers*, and any such comparison would have revealed any substantial disparities in the valuations." Id. (emphasis in original). As such, compliance with the provisions of OCGA § 22-1-9 was practicable for the city. See id at 658-659 (3).

In the present matter, despite Joe and James's refusal to cooperate in an appraisal, the City conducted an external appraisal[3] and sent two separate offers to purchase the Property. Further, while the initial two offers did not contain summaries of the value, the City later sent a copy of the appraisal to Joe and James at its last known address as shown by the Secretary of State as its official business address, which was returned as undeliverable. See *Morgan County*, 352 **Ga. App. at 563-564**

---

[3] After the City filed its petition for condemnation, Joe and James cooperated with an appraisal and provided photographs of the interior (taken prior to demolition of the Property) to the City's appraiser, who determined the value of the Property to be $265,000.

(b) (i) (where county violated the statute by failing to obtain an appraisal summary prior to initiating negotiations with the landowner, it "reset its opportunity to comply" by obtaining an appraisal and promptly providing it to the landowner along with an offer to purchase the property for the appraised amount), citing *City of Marietta*, 302 Ga. at 660 (4) (n. 8).

Setting aside whether the City's subsequent attempt to provide the appraisal to Joe and James was sufficient to reset its opportunity to comply with OCGA § 22-1-9, the City's delay in sending the appraisal was a harmless violation of OCGA § 22-1-9. Arpad had informed Wiles that Joe and James would be insulted by any offer below $500,000 and that Joe and James were uninterested "in the results of any appraisal[.]"

> When a government seeks to acquire real property, [OCGA §] 22-1-9 calls for the government to, among other things, pursue negotiations before resorting to the power of eminent domain, obtain an independent appraisal of the real property to establish its fair market value, offer no less than the value established by the independent appraisal, disclose the basis for that valuation to the owner of the real property, and *negotiate in good faith.*

*City of Marietta*, 302 Ga. at 650 (2) (emphasis supplied). Here, the evidence demonstrates that the City attempted to negotiate in good faith, but Joe and James refused to do so. By preemptively informing the City than any offer below $500,000

(an amount higher than the amount later awarded by the jury) would be "insulting," and informing the City that Joe and James was uninterested in the results of the City's appraisal, the City's subsequent delay in sending the appraisal summary to Joe and James was, at most, a harmless violation of OCGA § 22-1-9. Compare *City of Marietta*, 302 Ga. at 660 (4) (n. 8); see generally *Sweat v. Sweat*, 281 Ga. 543, 545 (2) (641 SE2d 1) (2007) ("To have reversible error, there must be harm as well as error, and the lack of harm renders the enumeration of error without merit."). As such, the trial court did not err in denying the motion to set aside the petition, and the subsequent motion for reconsideration.

2. Joe and James argues that the trial court erred by limiting post-judgment interest to thirty days. Following the jury trial, the judgment was entered on July 11, 2022. The City filed a motion for leave to deposit additional funds into the registry of the court, which the trial court granted and ordered post-judgment interest for "30 days from the date of the Judgment until the filing of the Notice of Appeal." The appellate record is silent regarding when the City deposited the full amount of the judgment into the registry of the court, but Joe and James concede that it occurred on October 17, 2022, 98 days after the judgment was entered.

"All judgments in this state shall bear annual interest upon the principal amount recovered[.]" OCGA § 7-4-12 (a). However, interest shall abate if a party complies with OCGA § 9-11-67, which provides that:

> In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing to be held by the clerk of the court, subject to withdrawal, in whole or in part, at any time thereafter upon order of the court, upon posting of sufficient security. Where the thing deposited is money, interest thereupon shall abate.

Here, the trial court ordered that post-judgment interest was to cease after the filing of the notice of appeal, rather than until the judgment was paid into the court as required by OCGA § 9-11-67. However, "[p]ost-judgment interest is not abated by an appeal of the judgment, even if the judgment is appealed by the party in whose favor it was rendered." *Threatt v. Forsyth County*, 262 Ga. App. 186, 190 (3) (585 SE2d 159) (2003) (citation and punctuation omitted). "[P]ost-judgment interest is due from the date the judgment is entered *until the date the judgment is paid*." *St. Paul Reinsurance Co. v. Ross*, 276 Ga. App. 135, 142 (2) (622 SE2d 374) (2005) (citation and punctuation omitted, emphasis supplied).

10

"The trial court had no authority to modify the terms of OCGA § 9-11-67[.]" *Threatt v. Forsyth County*, 250 Ga. App. 838, 845 (2) (552 SE2d 123) (2001). Accordingly, we vacate the order of the trial court as to post-judgment interest and remand the case for judgment to be issued in accordance with this opinion.

Case No. A23A0822

3. Finally, Joe and James contends that the trial court erred by denying its motion for attorney fees and expenses pursuant to OCGA § 9-15-14 (a) and (b).

"The damages authorized by § 9-15-14 are intended not merely to punish or deter litigation abuses but also to recompense litigants who are forced to expend their resources in contending with abusive litigation." *Riddell v. Riddell*, 293 Ga. 249, 250 (744 SE2d 793) (2013) (citation and punctuation omitted). We review the grant or denial of fees under OCGA § 9-15-14 (a) or (b) for abuse of discretion. See id.; *Long v. City of Helen*, 301 Ga. 120, 122 (799 SE2d 741) (2017).

A party is entitled to reasonable and necessary attorney fees and expenses of litigation under OCGA § 9-15-14 (a) when another party "has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." Here, an award of

11

attorney fees was not authorized under subsection (a) "because in granting the condemnation petition, the trial court implicitly acknowledged the existence of a justiciable claim." *McKemie v. City of Griffin*, 272 Ga. 843, 844 (2) (537 SE2d 66) (2000). Joe and James also argues that, because the City failed to pay $265,000 into the trial court's registry, the amount of the City's appraisal that occurred during litigation, they were entitled to attorney fees. However, because the City's initial deposit was based upon an appraisal made by a qualified appraiser, "it cannot be said that its position was void of any justiciable fact, such that it could not be reasonably believed that a court would accept it." *Dept. of Transp. v. Woods*, 269 Ga. 53, 55 (2) (494 SE2d 507) (1998) (citation and punctuation omitted). As such, the trial court did not abuse its discretion in denying attorney fees under OCGA § 9-15-14 (a).

OCGA § 9-15-14 (b) authorizes a trial court to award reasonable and necessary attorney fees and expenses upon a finding that an action, or any part thereof, "lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct[.]" As stated, supra, the record contains evidence that the City attempted to engage in good faith negotiations with Joe and James, but Joe and James refused. Following the external appraisal, the City issued

an offer for the full appraisal amount, and then later increased the offer amount by twenty percent. Joe and James failed to respond to the offers and told Wiles that any offer less than $500,000 would be "insulting." The jury awarded Joe and James $435,000 in compensation for the Property, an amount Joe and James had previously stated would be "insulting." The City's petition to condemn, and subsequent litigation, did not lack substantial justification. See *Dept. of Transp.,* 269 Ga at 56 (2) ("[F]ees are not recoverable in condemnation cases under OCGA § 9-15-14 (b) merely because the verdict exceeds the condemnor's estimate, based upon valid evidence, of fair market value. Rather, as explicitly stated in the statute, there must be some evidence of improper conduct, a lack of substantial justification, or an intent to delay or harass."). Accordingly, the trial court did not abuse its discretion in denying Joe and James's motion for attorneys fees.

In summary, in A23A0304, we affirm the trial court's order in part, but we vacate the order in part and remand the case to the trial court to enter an order for post-judgment interest in accordance with this opinion. In A23A0822, we affirm the trial court's order denying the motion for attorney fees.

13

*Judgment in Case No. A23A0304 affirmed in part, vacated in part and case remanded. Judgment in Case No. A23A0822 affirmed. Miller, P. J., and Hodges, J., concur.*