A98A0368. ATLANTA GAS LIGHT COMPANY v. TRINITY
CHRISTIAN METHODIST EPISCOPAL CHURCH et al.
A98A0369. ATLANTA GAS LIGHT COMPANY v. THOMAS et al.
A98A0370. ATLANTA GAS LIGHT COMPANY v. UPSHAW et al.
(500 SE2d 374)

ELDRIDGE, Judge.

Appellant Atlanta Gas Light Company appeals (1) the trial court's judgment affirming individual arbitration awards to appellees Trinity Christian Methodist Episcopal Church, Earl Harvey, Lula Barnes, and Jerry Thomas (case no. A98A0369); (2) the trial court's judgment affirming individual arbitration awards to appellees Pheotis Upshaw and Barbara Wiley (case no. A98A0370); and (3) the trial court's order denying appellant's motion to vacate the appellees' arbitration awards (case no. A98A0368). We affirm.

Appellees, property owners in a defined area of Augusta, Richmond County, Georgia, are six members in a sizable class-action suit seeking recovery for damage to property resulting from the manufacture of gas which occurred at appellant's now decommissioned plant located in the same defined area. After extensive negotiations, all parties entered into a binding arbitration agreement pursuant to OCGA § 9-9-1 et seq.

A Settlement Agreement ("Agreement") was submitted to the superior court whereby injured class members, at their election, would be compensated for either (1) a diminution in the fair market value of the damaged property *or* (2) the transfer to appellant of marketable title to the damaged property. The Agreement specifies that the amount of compensation will be determined by a neutral umpire following a prescribed Claims Process. Section III (E) of the Claims Process provides that "[t]he issue in the hearing shall be (1) whether the class member suffered any damage to or destruction or loss of property within the class area arising from the former manufactured gas plant site in Augusta, Georgia as a result of earlier operation or decommissioning of the manufactured gas plant and (2) if so, the amount of the diminution in fair market value as a result thereof (the 'Settlement Amount'). *The umpire may consider intrinsic value, including historical meaning, denominational impact and replacement costs.*" (Emphasis supplied.)

If a class member elects to convey marketable title to his contaminated property, the Agreement provides that "AGLC [appellant] shall purchase the property at its fair market value. To determine fair market value of the property the parties shall use the Claims Process, except that *the only issues at the hearing will be those identified in Section III (E) above.*" (Emphasis supplied.) The Agreement was approved and made the order and judgment of the court.

Pursuant to the Agreement, the six appellees/class members

elected to convey marketable title to appellant. The umpire made awards to the individual appellees based upon the fair market value of the property, taking into account intrinsic, historic and denominational value of the individual properties, and replacement cost thereof. The superior court entered judgments affirming the individual awards and denied appellant's motion to vacate. This appeal followed.

The Georgia Arbitration Code "shall apply to all disputes in which the parties thereto have agreed in writing to arbitrate and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced." OCGA § 9-9-2 (c). The Code sets forth four statutory grounds for vacating an arbitration award upon the application of a party subject to the award. The arbitration award shall be vacated if the court finds that the rights of the applying party were prejudiced by "(1) Corruption, fraud, or misconduct in procuring the award; (2) Partiality of an arbitrator appointed as a neutral; (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; or (4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection." OCGA § 9-9-13 (b). These four grounds are "the exclusive grounds for vacating an arbitration award." *Greene v. Hundley*, 266 Ga. 592, 595 (468 SE2d 350) (1996). Herein, grounds 1, 2, and 4 are not applicable. Appellant challenges the awards made to the six appellees on the same ground: the umpire allegedly overstepped and imperfectly executed his authority as proscribed by OCGA § 9-9-13 (b) (3) when he "went beyond the scope of authority granted him by the settlement agreement and manifestly disregarded Georgia law regarding the consideration of intrinsic and historical value, replacement cost, in arriving at fair market value" of appellees' properties.[1] *Held*:

1. Appellant contends that "the umpire's awards do not draw their essence from the settlement agreement and reflect a dispensing of the umpire's personal notions of justice," because the umpire utilized the intrinsic, historic, and denominational[2] value of the properties, as well as replacement cost, to arrive at an award; appellant contends that "the gravamen of the settlement agreement as it relates to these awards is that AGLC agreed to buy the property for its *fair market value*." (Emphasis in original.) Appellant argues that

---

[1] That the appellees' individual properties sustained damage is not disputed by the appellant.

[2] The applicability of "denominational" value relates only to the property belonging to appellee Trinity Christian Methodist Episcopal Church, which applicability appellant contests.

"it is evident from the Holding and the language in the Awards, that the umpire in fact decided to dispense 'his own brand of industrial justice' by awarding settlement amounts which he believed to be 'fair.' While this may be a laudable endeavor, it is not an endeavor with which he was charged under the terms of the settlement agreement approved by the Court." We disagree.

The Agreement specifically authorized the umpire to utilize measures above and beyond traditional calculations of "fair market value," to which traditional calculations appellant now wishes strict adherence. Clearly, "intrinsic, historic, and denominational value" and "replacement costs" are outside the scope of a standard "fair market value" evaluation as defined by appellant. "Fair market value" is defined as the price at which the property would change hands between a *willing buyer* and a *willing seller*, neither being under any *compulsion to buy or to sell* and both having reasonable knowledge of relevant facts. See *Wright v. MARTA*, 248 Ga. 372, 375 (283 SE2d 466) (1981). Obviously, strict adherence to such definition cannot be accomplished in the instant case where the sellers are not willing, and the buyer is being compelled to do so by lawsuit. Moreover, the terms of the Agreement specifically permit other relevant considerations. The fact that all parties agreed that these *additional* considerations would be included in a determination of the settlement amounts warrants an expectation that the umpire would bow to notions of "fairness" and base the settlement amounts upon more than a strict "fair market value" analysis. "[The] interpretation, meaning, or intent of the agreement [is] a matter clearly within the scope of the arbitrators' authority." *Banderas v. Doman*, 224 Ga. App. 198, 199 (480 SE2d 252) (1997). Hence, the umpire did not overstep his authority in awarding settlement amounts which encompass notions of fair market value, intrinsic, denominational, and historic value, as well as replacement cost. Such were permissible considerations under the terms of the Agreement.

2. Appellant contends that the umpire imperfectly executed his authority by manifestly disregarding Georgia law in rendering the awards. Appellant argues that the umpire improperly considered the replacement cost of the property, without evidence of depreciation which is required under Georgia law, and that the umpire judged "intrinsic value" to mean the subjective value of the property to the owner, contrary to Georgia law. Appellant's arguments address two points: (1) the application of Georgia law to the umpire's holdings; and (2) the sufficiency of the evidence to support the umpire's holdings.

(1) "The authority of the arbitrator gives [him] the inherent power to fashion a remedy as long as the award draws its essence from the contract or statute." (Citations and punctuation omitted.)

*Greene,* supra at 595. The Code does not require that an arbitrator enter written findings of fact and law in support of an award, "nor does the Code require an arbitrator to explain the reasoning behind an award." Id. Simply because the umpire in the instant case provided a limited rationale for his holdings does not provide a vehicle whereby the awards may be vacated because Georgia law was allegedly "imperfectly" applied. "[M]erely because the relief granted in the arbitration award could not or would not be granted by a court of law or equity is not grounds for vacating or refusing to confirm an award." (Punctuation omitted.) *Greene,* supra at 595; *Banderas,* supra at 201. In the instant case, the umpire made "final and definite award[s] upon the subject matter submitted," as required by statute. OCGA § 9-9-13 (b) (3). As the awards are consistent with the terms of the Agreement and thus reflect the "essence" of the contract, they do not demonstrate an imperfect execution of the umpire's authority.

(2) "The prohibition against considering the sufficiency of the evidence as grounds for vacating an arbitration award is unconditional. Therefore, a reviewing court is prohibited from weighing the evidence submitted before the arbitrator, regardless of whether the court believes there to be sufficient evidence, or even any evidence, to support the award." *Greene,* supra at 596-597. Thus, to the extent that appellant's contentions regarding evidence of depreciation and subjective evidence of "intrinsic value" address the sufficiency of the evidence to support the umpire's awards, such contentions will not be considered. *Banderas,* supra at 201.

In sum, appellant has not demonstrated any statutory grounds for vacating the arbitration awards. The parties expressly agreed that the arbitrator would resolve all existing disputes between them and, accordingly, we find that the umpire in this case did not overstep his authority or engage in an imperfect execution thereof. *Greene,* supra at 596.

*Judgments affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 25, 1998.

*Hull, Towill, Norman & Barrett, David E. Hudson, Long, Aldridge & Norman, Phillip A. Bradley, R. Daniel Beale,* for appellant.

*Dye, Tucker, Everitt, Wheale & Long, Duncan D. Wheale, Thomas W. Tucker, Bell & James, John C. Bell, Jr., Pamela S. James,* for appellees.