## A03A2405. CAREY v. HOUSTON ORAL SURGEONS, LLC et al.
### (595 SE2d 633)

MIKELL, Judge.

Pursuant to the terms of a purchase agreement, the Houston County Superior Court ordered Dr. Vincent M. Carey to pay attorney fees to the defendants in this case. After the entry of that order, the defendants and Carey executed a mutual release, which expressly included the release of claims for attorney fees. Carey contends that the mutual release negated the prior award of attorney fees. We agree and reverse.

The record shows that in 1979, Clyde D. Marlow formed the professional association, Clyde D. Marlow, D.D.S., M.Sc., Oral & Maxillofacial Surgery, P.A. ("OMS"). After maintaining offices in Macon and Dublin, OMS decided to expand to Warner Robins in 1997. OMS then recruited and hired Carey to work as an oral surgeon at its new office in Warner Robins. Until August 2001, Carey worked at the office in Warner Robins four days a week, and Marlow worked there one day per week.

As a result of discussions between Marlow and Carey about the possible sale of the Warner Robins practice to Carey, Marlow formed a new company, Houston Oral Surgeons, LLC ("Houston LLC") in June 2000. After Houston LLC acquired the Warner Robins practice and assets from OMS, Houston LLC then employed Carey as an oral surgeon in Warner Robins. On or about July 1, 2000, Carey executed a one-year employment agreement, which offered him an associateship with Houston LLC. This "letter agreement" also contained noncompete and nonsolicitation covenants.

After negotiations for the sale of the Warner Robins practice floundered, Carey provided written notice to Marlow of his decision to resign effective June 5, 2001. When Marlow learned about Carey's decision not to purchase the Warner Robins practice, he reduced the purchase price of Houston LLC's assets from $425,000 to $275,000. Notwithstanding the continuing negotiations for the sale of Houston LLC, Carey filed a declaratory judgment action in September 2001 (Civil Action File No. 2001-V-70504-L), to ascertain the enforceability of the restrictive covenants in the employment agreement and to enjoin Houston LLC and OMS from enforcing those covenants.

While his lawsuit remained pending, Carey renewed his interest in purchasing Houston LLC and the parties agreed to mediate Carey's action. During the mediation on December 5, 2001, Carey, Houston LLC, and OMS executed a "Settlement Memorandum" in which the defendants agreed to accept $232,500 for the sale of Hous-

ton LLC. This one-page Settlement Memorandum contained four handwritten terms:

> 1) Parties to dismiss w/out prejudice Civ. Action 2001-V-70504-L in Houston County Superior Ct., with each side to bear own costs and expenses, including attorneys fees; 2) each side to execute mutual, full, general releases of all claims; 3) parties to execute Purchase Agreement substantially as the attached subject to changes agreed to by counsel in good faith by 5 p.m. on 12/7/01; 4) the settlement is contingent upon a 5 yr. extension on reasonable terms of the existing office lease.

Over the next several months, additional negotiations ensued as to the terms of the "Purchase Agreement," in particular the noncompete provisions. But the closing did not occur on the date scheduled in the Purchase Agreement. In a letter of May 21, 2002, Carey's counsel expressed an unwillingness to enter a purchase agreement that altered the terms of the noncompete clause that were agreed to on December 5, 2001. Notwithstanding the parties' mutual efforts to finalize an agreement, the transaction unraveled and Houston LLC and OMS filed a "motion to allow counterclaim by supplemental pleading" on June 10, 2002. Houston LLC and OMS asserted counterclaims against Carey for breach of contract, fraud, and punitive damages, and sought attorney fees and costs under OCGA § 13-6-11.

The trial court converted the motion to a motion to enforce settlement, which it granted on August 21, 2002, along with Carey's motion for declaratory judgment "to the extent of removing any uncertainty existing as to the December 5, 2001, Agreement" on certain of the terms thereof. Additionally, the trial court determined that "[g]iven the findings and conclusions of the Court with respect to the validity of the Purchase Agreement, Defendants are entitled to recoup their reasonable costs of litigation, per Article VII (Miscellaneous), Section 7.07." At that time, however, no version of a purchase agreement including Section 7.07 as it appeared in the December 5, 2001, "draft" had been executed by the parties. As stated in the December 5, 2001, draft, Section 7.07 provided as follows:

> Except as otherwise specifically provided herein, if any action or proceeding is brought by any party with respect to this Purchase Agreement, or with respect to the interpretation, enforcement or breach hereof, the prevailing party in such action will be entitled to an award of all reasonable costs of litigation or arbitration, including, without limitation, attorneys' fees, to be paid by the losing party, in such

amounts as may be determined by the court having jurisdiction of such action or proceeding or by the arbitrators deciding such action or proceeding.

On November 1, 2002, after an evidentiary hearing on attorney fees, the trial court entered an order requiring Carey to pay $40,000 in attorney fees and expenses to Houston LLC and OMS no later than 90 days from October 25, 2002. The court found that "the costs of litigation, including attorney's fees, were properly awarded to Defendants under Section 7.07 of the Purchase Agreement attached to the parties' Settlement Agreement [sic]." The trial court also directed the parties to perform under the "Settlement Agreement [sic]," including closing the transaction by December 1, 2002.

Less than three weeks after the entry of that order, Carey purchased Houston LLC. The finalized Purchase Agreement included, without alteration, Section 7.07 on attorney fees as that section appeared in the December 2001, draft. Carey, Houston LLC, OMS, and Marlow also executed a "MUTUAL RELEASE" on November 20, 2002. Paragraph 2 of the Mutual Release expressly provided:

> Defendants and Dr. Marlow, for themselves and their successors, and assigns, hereby releases, acquits, and forever discharges [sic] Dr. Carey and his successors, assigns, . . . from any and all claims, debts, demands, obligations, liabilities, actions, causes of action, losses, costs and expenses (including attorney's fees) of any kind or nature whatsoever, known or unknown, direct or consequential, equitable or legal, foreseen or unforeseen, matured or unmatured, developed or undeveloped, concealed or unconcealed, except for those set forth in paragraph 3 below, that Defendants or Dr. Marlow might have, or might claim to have against the Carey Releasees which arise from the transactions or occurrences that are alleged or could have been alleged in the Lawsuit or Dr. Carey's employment with the Defendants.

Paragraph 3 stated, "The mutual releases contained in paragraphs 1 and 2 above are not intended to effect and do not effect obligations between the parties under the Settlement Memorandum between the Parties dated December 5, 2001, and the Purchase Agreement between the Parties attached thereto." The Settlement Memorandum obligated "each side to bear own costs and expenses, including attorneys fees," while the Purchase Agreement contained Section 7.07, which awarded attorney fees to the prevailing party should a dispute arise with respect to the Purchase Agreement.

On November 27, 2002, Carey filed a notice of dismissal without

prejudice of his declaratory judgment action, and attached thereto the Settlement Memorandum, the Purchase Agreement, and the Mutual Release. Houston LLC and OMS responded by filing a motion to strike Carey's notice of dismissal. While conceding that Carey had, in fact, performed the requirements of the Purchase Agreement by consummating the purchase of Houston LLC, they maintained that they were still owed attorney fees pursuant to the trial court's November 1, 2002, order. They argued that the right to dismiss given to a plaintiff by OCGA § 9-11-41 (a) " 'cannot be exercised after entry in the trial court of a verdict or judgment for the defendant because the right given to the plaintiff cannot be used to deprive the defendant of victory gained.' *Lakes v. Marriott Corp.*, 210 Ga. App. 335, 336 (436 SE2d 36) (1993), quoting *Cooper v. Rosser*, 233 Ga. 388 (1) (211 SE2d 303) (1974)." The trial court granted the motion to strike Carey's notice of dismissal without prejudice and directed the clerk "to disallow any future filing of same until such time as the Court's [August 21, 2002, and November 1, 2002,] orders have been complied with by Plaintiff in all respects, and specifically by the payment of the ordered attorney's fees and expenses."

Carey appealed the grant of the motion to strike, which we dismissed on jurisdictional grounds. On June 13, 2003, the trial court directed entry of final judgment and required Carey to pay $40,000 in attorney fees and expenses as set forth in its November 1, 2002, order, plus interest. Carey's appeal of that order resulted in the case sub judice.

1. Carey contends that the trial court erred in striking his notice of dismissal without prejudice filed on November 27, 2002, in light of the executed Mutual Release. In reviewing a question of law, as here, we owe no deference to a trial court's ruling on a legal question.[1] "Where it is apparent that a trial court's judgment rests on an erroneous legal theory, an appellate court cannot affirm."[2] This is such a case.

Pretermitting the propriety of the trial court's initial ruling to award attorney fees under Section 7.07 of the Purchase Agreement, and its decision to award the amount of $40,000 in such fees, we find that the trial court erred in entering the subsequent orders requiring Carey to pay the attorney fees because the "MUTUAL RELEASE" failed to preserve such an award. In fact, it specifically included the release of claims to attorney fees.

A release or settlement agreement is a contract subject to construction by the court. It is governed by state law appli-

---

[1] *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).
[2] (Citation omitted.) *Gwinnett County v. Davis*, 268 Ga. 653, 655 (492 SE2d 523) (1997).

cable to contracts in general. The cardinal rule of construction is to determine the intention of the parties. But no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.[3]

Moreover, where the terms of a written release are clear and unambiguous, the court will look to the release alone to find the intention of the parties.[4] The fact that the scope of a release is broad does not make that release ambiguous.[5]

Carey, Houston LLC, Marlow, and OMS were the named parties to the Mutual Release. Under the terms of this release, the "Defendants and Dr. Marlow" agreed to release, acquit, and forever discharge Carey "from any and all claims, debts, demands, obligations, liabilities, actions, causes of action, losses, costs and expenses (including attorney's fees) of any kind or nature whatsoever, known or unknown, . . . matured or unmatured, developed or undeveloped. . . ." By doing so, Houston LLC and OMS released and forever discharged Carey from the payment of such fees. Although paragraph 3 stated that the Mutual Release did not effect the "obligations between the parties under the Settlement Memorandum between the Parties dated December 5, 2001, and the Purchase Agreement between the Parties attached thereto," neither document alters this outcome. By the terms of the Settlement Memorandum, the "parties" obligated themselves to dismiss the lawsuit without prejudice "with each side to bear own costs and expenses, including attorneys fees."

Even had Section 7.07 of the Purchase Agreement been otherwise enforceable, it would not change the legal effect of the release. OMS was not a party to the Purchase Agreement; thus, it cannot invoke Section 7.07 of an agreement. Similarly, Houston LLC's reliance upon Section 7.07 is misplaced. In completing the sale on November 20, Houston LLC transferred under Section 1.03 all assets to Carey other than its cash, accounts receivable, and certain other excluded assets. Houston LLC did not list the attorney fee award among the excluded assets.[6] Although the record shows that OMS

---

[3] (Citation and punctuation omitted.) *Darby v. Mathis*, 212 Ga. App. 444-445 (1) (441 SE2d 905) (1994).

[4] *Rice v. Huff*, 221 Ga. App. 592, 593 (1) (472 SE2d 140) (1996).

[5] *Kinard v. Worldcom, Inc.*, 232 Ga. App. 278, 279 (500 SE2d 649) (1998).

[6] Also, we note that the record lacks specific evidence of Houston LLC's attorney fees. The supporting documentation and exhibits relate to the legal services provided to OMS and billed to OMS at its Macon address and not to Houston LLC, a separate legal entity located in Warner Robins. These legal services were incurred in drafting the counterclaim in Civil Action 2001-V-70504-L, and devising legal strategy relating to that action, the lawsuit that the Settlement Memorandum required the "Parties to dismiss w/out prejudice."

and Houston LLC requested attorney fees under OCGA § 13-6-11, the trial court awarded the attorney fees under Section 7.07 of the Purchase Agreement, a document that had not been executed at the time that the order of attorney fees was entered.[7]

> Settlement is, in and of itself, generally construed to be a final disposition of any claim against a party to settlement by a party to the settlement arising out of the subject incident, unless remaining claims are specifically reserved by any of the parties. Such compromises are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence.[8]

Because OMS and Houston LLC have not shown that the Mutual Release was invalid or that they specifically reserved any claim to the attorney fee award at issue, the plain and unambiguous language of the Mutual Release controls, and any and all causes of action that OMS and Houston LLC may have had against Carey are barred.[9] For these reasons, the award of attorney fees cannot stand.

2. Carey asserts that the trial court erred in striking his notice of dismissal without prejudice because the Settlement Memorandum required the parties to dismiss the case without prejudice.

A trial court's order on a motion to enforce a settlement agreement is subject to de novo review, under the same standards applicable to a motion for summary judgment.[10] Where parties to litigation have entered into a definite, certain, and unambiguous mutual release of their claims, which is not denied, the trial court should make that settlement the judgment of the court, thereby terminating the litigation.[11] It follows, therefore, that the trial court also erred in striking Carey's notice of dismissal for this additional reason.

3. In light of our holding, we need not reach Carey's remaining arguments.

As a final matter, we find no merit to OMS and Houston LLC's motion for the imposition of sanctions under OCGA § 5-6-6.

*Judgment reversed. Johnson, P. J., and Eldridge, J., concur.*

---

[7] See *Ellis v. Gallof*, 220 Ga. App. 518, 519 (1) (469 SE2d 288) (1996) (although OCGA § 13-6-11 is not limited to prevailing parties, a plaintiff must prevail on his basic cause of action in order to obtain litigation expenses under OCGA § 13-6-11).

[8] (Citations and punctuation omitted.) *Bradley v. British Fitting Group*, 221 Ga. App. 621, 624 (3) (472 SE2d 146) (1996).

[9] See id.; *Darby*, supra at 445 (1).

[10] *Superglass Windshield Repair v. Mitchell*, 233 Ga. App. 200 (504 SE2d 38) (1998).

[11] *Stacey v. Jones*, 230 Ga. App. 213, 215 (2) (495 SE2d 665) (1998).

DECIDED FEBRUARY 24, 2004.

*George W. McGriff & Associates, George W. McGriff, Bernard R. Thomas, Sr., Eric E. Wyatt,* for appellant.

*Daniel, Lawson, Tuggle & Jerles, Robert T. Tuggle III, Jones Day, Michael J. McConnell, Joseph E. Finley,* for appellees.