**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 17, 2014**

# In the Court of Appeals of Georgia

A13A1782. BERGER v. WELSH.

R<small>AY</small>, Judge.

Floyd K. Berger appeals from a trial court order vacating an arbitration award in his favor after an evidentiary hearing before a Financial Industry Regulatory Authority ("FINRA") arbitrator. He contends that the superior court erred in (1) applying state law, rather than federal law, in its review of the award; (2) vacating the award on the grounds that the arbitrator overstepped his authority and manifestly disregarded the law; (3) ordering a rehearing on the issue of attorney fees and expenses; and (4) denying his cross-motion to confirm the award. For the reasons that follow, we reverse the superior court's decision and remand with instruction that the court confirm the award.

Berger was an employee of Bear Stearns & Co. in Atlanta who held a primarily administrative position with fixed compensation, but also worked on client accounts where compensation was commission-based. He alleged that because he was salaried, the firm's payroll system did not offer a convenient way for him also to receive commissions. With the firm's agreement, he and a Bear Stearns' commission-based financial advisor, John Welsh, agreed that Berger would enter his commission-based production information under Welsh's representative number. Berger alleged that for several years, as per their agreement, Welsh transferred the appropriate portion of commissions to him, but then began to skip payments. In June 2011, after both men had left their jobs at Bear Stearns, Berger filed a statement of claim against Welsh with FINRA's dispute resolution division, alleging, inter alia, breach of contract and unjust enrichment, and seeking attorney fees and an award of approximately $55,000 exclusive of interest, attorney fees, and costs.

During a hearing before a FINRA arbitrator, Welsh moved to dismiss, arguing that the claims had been released in a severance agreement Berger signed with Bear Stearns, in which Berger agreed to release Bear Stearns and its current and former employees from claims arising prior to the date of the release agreements. He further argued that any award would give Berger double recovery, because Berger received

2

severance pay in consideration for signing the releases. The arbitrator denied the motion, and after the hearing, ruled in Berger's favor, finding that Welsh owed him $98,575, which included pre-judgment interest. The arbitrator did not award attorney fees. Welsh filed a motion in the Superior Court of Cobb County to vacate or modify the award, and after a hearing, the superior court vacated the award and ordered a rehearing on Welsh's claim for attorney fees. Berger appeals.

1. Berger first contends that the superior court erred in applying state law, rather than federal law, in its review of his case.

At the outset of the order being appealed, the superior court states that it must determine whether to apply the Georgia Arbitration Code ("GAC"), OCGA § 9-9-1 et seq., or the Federal Arbitration Act ("FAA"), 9 USC § 1 et seq., to the parties' cross motions to vacate or confirm the award. On appeal, Welsh argues that the superior court was correct in deciding the case under the GAC; Berger counters that because this was a FINRA arbitration and involved interstate commerce, the FAA applies. Without deciding whether the underlying dispute involved interstate commerce, the trial court determined that, regardless, the GAC still would apply. We need not engage in a choice of law analysis, however, because under either the FAA or the GAC, the trial court erred in vacating the arbitration award.

3

"It is well established under both federal and Georgia law that judicial review of an arbitration is among the narrowest known to the law." (Citations and punctuation omitted.) *Malice v. Coloplast Corp.*, 278 Ga. App. 395, 397 (629 SE2d 95) (2006), superseded by statute on other grounds as noted in *Murphree v. Yancey Bros. Co.*, 311 Ga. App. 744, 747 n. 10 (716 SE2d 824) (2011). Further, "[b]ecause our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes." (Citation and punctuation omitted.) *Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 287 Ga. 408, 412 (1) (696 SE2d 663) (2010) (*Brookfield II*).

The GAC, by its enactment, "repealed common law arbitration in its entirety, and it must, therefore, be strictly construed." (Footnotes omitted.) *Greene v. Hundley*, 266 Ga. 592, 594 (1) (468 SE2d 350) (1996). Thus, it strictly limits the scope of a superior court's review of an arbitrator's award and limits any subsequent appellate review. Id. at 597 (3). These limits on a court's power to vacate an arbitration award exist "in order not to frustrate the legislative purpose of avoiding litigation by resort to arbitration. Hence, the [GAC] demands that courts give extraordinary deference to the arbitration process and awards so that the trial court cannot alter the award." (Citations and punctuation omitted.) *Patterson v. Long*, 321 Ga. App. 157, 159-160

4

(1) (741 SE2d 242) (2013). The GAC provides five *exclusive* statutory bases for vacatur. *Phan v. Andre & Blaustein, LLP*, 309 Ga. App. 191, 193 (1) (709 SE2d 863) (2011). OCGA § 9-9-13 (b) provides

> [t]he award shall be vacated on the application of a party who . . . participated in the arbitration . . . if the [reviewing] court finds that the rights of the party were prejudiced by: (1) Corruption, fraud, or misconduct in procuring the award; (2) Partiality of an arbitrator appointed as a neutral; (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; (4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or (5) The arbitrator's manifest disregard of the law.

The superior court vacated the arbitrator's decision pursuant to the third and fifth factors, finding that the arbitrator overstepped his authority and manifestly disregarded the law.

As under the GAC, the FAA likewise "imposes a heavy presumption in favor of confirming arbitration awards." (Citation omitted.) *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288 (II) (B) (11th Cir. 2002). The grounds for vacatur pertinent to this appeal are defined in 9 USC § 10 (a), which provide, in pertinent part, that an award may be vacated

5

(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"The burden is on the party requesting vacatur of the award to prove one of these four grounds." (Citation omitted.) *Riccard*, supra at 1289 (II) (B). As crafted, this appeal involves only the fourth factor of 9 USC § 10, that is, whether the arbitrator exceeded his powers.

2. Berger argues that the superior court erred in vacating the arbitration award on the grounds that the arbitrator overstepped his authority. The superior court found that the arbitrator overstepped his authority by entering an award in favor of Berger on claims that, according to Welsh, Berger had previously released.

"Overstepping" like the other grounds for vacating arbitration awards is very limited in scope. "Overstepping" has been described as "addressing issues not properly before the arbitrator." Thus, this ground does not apply where an issue is properly raised before the arbitrator. The limits

of an arbitrator's authority are defined by the parties' arbitration agreement.

(Citations and punctuation omitted.) *Henderson v. Millner Dev., LLC*, 259 Ga. App. 709, 711 (1) (578 SE2d 289) (2003). Likewise, under the FAA, "arbitrators may exceed their power within the meaning of § 10 (a) (4) if they fail to comply with mutually agreed-upon contractual provisions in an agreement to arbitrate." (Citation and footnote omitted.) *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (II) (A) (2011) (11th Cir. 2011). This Court has determined that "[u]nder both federal and Georgia law, arbitration is a matter of contract, meaning that arbitrators derive their authority to resolve disputes only from the parties' agreement." (Footnote omitted.) *Barge v. St. Paul Fire & Marine Ins. Co.*, 245 Ga. App. 112, 113 (1) (535 SE2d 837) (2000).

Here, Berger and Welsh apparently had no written agreement that would have provided for arbitration of their dispute over the payment of the commissions. However, after Berger filed his statement of claim with FINRA, Welsh and Berger both signed an agreement to submit the issues in the statement of claim, as well as any answers, cross-claims or counterclaims, to arbitration in accordance with FINRA procedures. The parties' filings addressed, inter alia, breach of contract, unjust

7

enrichment, money had and received, and attorney fees. Welsh specifically raised the defense of release of claims in his answer, and at the arbitration hearing, his counsel moved to dismiss the action based on the existence of the release agreements. FINRA Rule 13504 (a) (6) (A) gives an arbitrator the authority to determine whether claims have been released.

The superior court did not find, nor did either side argue, that the release agreements were not properly before the arbitrator. Further, the superior court did not find, nor did the parties argue, that the arbitrator addressed any other issues that were not properly raised or were outside the scope of his authority under the parties' agreement to arbitrate under FINRA.

Rather, Welsh argues, and the superior court found, that the arbitrator overstepped his authority because he impermissibly construed the unambiguous terms of the release agreements, ignoring their plain language. Both Welsh and the superior court cite *Carey v. Houston Oral Surgeons, LLC*, 265 Ga. App. 812, 815-816 (1) (595 SE2d 633) (2004), where this Court found that if parties have entered into an unambiguous release of claims, no construction of the release contract is permissible, and they connect that general principle to *Sweatt v. Intl. Dev. Corp.* 242 Ga. App. 753, 757 (1) (531 SE2d 192) (2000), in which this Court vacated an arbitrator's award

8

finding that he impermissibly ignored the explicit, unambiguous liquidated damages provision in the parties' contract by awarding actual damages.

While these principles are correct, the instant case is distinguishable. Berger argued before the arbitrator that a third-party beneficiary of a contract – in this case, Welsh – must be an intended third-party beneficiary in order to enforce that contract. Under any arguably applicable law, to enforce a contract, a third-party beneficiary must be the intended, not incidental, beneficiary, and determining the intent of such a contract is a matter of contract construction. See *Archer Western Contractors, Ltd. v. Estate of Pitts*, 292 Ga. 219, 228 (2) (735 SE2d 772) (2012); *Versico, Inc. v. Engineered Fabrics Corp.*, 238 Ga. App. 837, 840-841 (2) (520 SE2d 505) (1999);[1]

---

[1] Welsh appears to argue that because the release agreements provide that in the event of any dispute between Berger and Bear Stearns, New York law controls, then New York law also applies here. Regardless of the merits of this contention, "[i]t is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract , not an incidental beneficiary to whom no duty is owed." (Citation omitted.) *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 63 (II) (C) (2d Cir. 1984) (applying New York law). See also *Amin Realty v. K & R Constr. Corp.*, 306 A.D.2d 230, 231-232, 762 N.Y.S.2d 92 (2003).

*Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932-933 (III) (A) (2) (11th Cir. 2013).

Thus, we cannot say that the arbitrator overstepped his authority or rendered an award that did not reflect the essence of the contract, because the parties in agreeing to FINRA arbitration clearly agreed to allow the arbitrator to determine the applicability of the release agreements, and that is what he did. As noted above, the superior court did not find "that the arbitrator acted outside the scope of his contractually delegated authority. Hence, we must treat the arbitrator's award as if it represented an agreement between [Berger] and [Welsh] as to the proper meaning of the [release agreements.]" *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17*, 531 U.S. 57, 62 (II) (121 SCt 462, 148 LE2d 354) (2000).

The arbitrator's order does not reveal whether he considered the issue of Welsh's status as an *intended* beneficiary. The arbitrator made no findings of fact or conclusions of law related to the underlying award. The GAC does not require an arbitrator to make written findings of fact or to explain the rationale behind an award. *Greene*, supra at 595 (2). "The authority of an arbitrator gives [him] the inherent power to fashion a remedy as long as the award draws its essence from the contract or statute." (Punctuation and footnote omitted.) Id. Here, the arbitrator exercised the

10

authority granted to him by the parties to determine the applicability of the release agreements. Welsh essentially is "arguing that the arbitrator did not correctly interpret the contracts in question[.] . . . [C]ourts must not decide the rightness or wrongness of the arbitrators' contract interpretation[.]" (Citation and punctuation omitted.) *U.S. Intermodal & Thunderbolt Express v. Ga. Pacific Corp.*, 267 Ga. App. 832, 833 (600 SE2d 800) (2004). Likewise, under the FAA, because the parties

> bargained for the arbitrator's construction of their agreement . . . an arbitral decision even arguably construing or applying the contract must stand, regardless of the court's view of its demerits. Thus, the sole question a court should ask under the exacting standards of § 10 (a) (4) is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

(Citation and punctuation omitted.) *Southern Communications Svcs., Inc. v. Thomas*, 720 F.3d 1352, 1358-1359 (II) (A) (11th Cir. 2013). Even if the arbitrator made a factual error, "an arbitration award cannot be set aside for mistakes of fact made by the arbitrator[.]" *Scana Energy Marketing, Inc. v. Cobb Energy Mgmt. Corp.*, 259 Ga. App. 216, 219 (1) (d) (576 SE2d 548) (2002). The same holds true under the FAA. See *Cat Charter, LLC*, supra at 840 (I), n. 4 (noting that "the arbitrator's improvident,

11

even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award") (citation and punctuation omitted).

3. Berger asserts that the superior court erred in vacating the arbitration award on the grounds that the arbitrator showed manifest disregard for the law pursuant to OCGA § 9-9-13 (b) (5). We agree.

> [T]he concept of manifest disregard has never been the equivalent of insufficiency of the evidence or a misapplication of the law to the facts It is a much narrower standard, requiring a showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. Arbitrators must *deliberately ignore* applicable law to fall within the manifest disregard prohibition in OCGA § 9-9-13 (b) (5). Further, a finding of manifest disregard of the law requires (1) that the governing law alleged to have been disregarded is well defined, explicit and clearly applicable, and (2) proof that the arbitrator was aware of the law but decided to ignore it. Thus, an error in interpreting the applicable law does not constitute manifest disregard.

(Citations and punctuation omitted; emphasis in original). *Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 299 Ga. App. 614, 620-621 (3) (683 SE2d 40) (2009) (*Brookfield I*), affirmed by *Brookfield II*, supra. The burden of showing that both elements of manifest disregard of the law have been satisfied is on the party seeking to vacate the award. *Patterson*, supra at 160 (1).

12

The superior court cited *Carey*, supra at 815-816 (1) for the proposition that the law prohibits contract construction and requires arbitrators to enforce contracts according to their plain terms when the contracts are unambiguous. The superior court determined that "the Arbitrator announced his intention to ignore the plain and unambiguous terms of the Release Agreements expressly releasing Welsh from liability to Berger, both individually and in Welsh's official capacity as a 'past or present' Bear Stearns employee." The trial court provides a citation to a specific transcript page in support of its ruling. This transcript page shows the arbitrator, in ruling on Welsh's motion to dismiss, noted that the dispute was between the parties "as individuals" but stated that he read the release as being directed at actions "possibly exposing the firm to liability."

Welsh points to this statement as showing the arbitrator's stated intent to "ignore" or impermissibly "interpret[]" the "unambiguous terms of the Release Agreements[.]" Welsh argues that the releases unambiguously barred any claim Berger had against him with their language releasing Bear Stearns as well as its current and former employees from liability "whether as individuals or in their official capacity."

13

However, immediately following the arbitrator's statement cited above and with which Welsh takes issue, the arbitrator added, reading from the General Release,

> Finally, I note on page 73 of the release that it says that Employee, however, does not intend to nor is Employee waiving any rights that may arise after the date that this agreement was signed. There has been an allegation that the agreement, if there was such an agreement between Mr. Berger and Mr. Welsh, was affirmed after the date that the release is signed. Therefore, I am going to deny the motion to dismiss.

Rather than showing a deliberate intent to ignore the plain language of the release agreements, the statements above show that the arbitrator considered that language in the context of the motion to dismiss, and denied the motion because he believed at least some of the claims may have arisen after the release date and therefore were excluded, by the plain terms of the release agreement, from its purview.

Again, the arbitrator's order (as opposed to his ruling on the motion to dismiss) states no legal or factual rationale underlying the award. Our Supreme Court, noting that a showing of manifest disregard "is an extremely difficult one to make[,]" has offered an example of an appropriate situation for such a finding, which

> occurred only because *the arbitration award itself made an explicit recital of the winning party's argument that the correct law should be ignored rather than followed*. In that case, proof of a manifest disregard

14

of the law was blatantly evident on the face of the award. In any other case, *similarly clear evidence of the arbitrator's intent to purposefully disregard the law is required*.

(Citations omitted; emphasis supplied.) *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 309 (647 SE2d 574) (2007). Such evidence is not present here.

As for the FAA, it has no provision for vacatur that mirrors the GAC's manifest disregard standard.

> Given that, in our circuit, we recognize neither an incorrect legal conclusion, nor a manifest disregard of the law, as grounds for vacating or modifying an award, we are left, under [9 USC] § 10 (a) (4), with a single question: did the arbitrator exceed his powers, or so imperfectly execute them that a mutual, final, and definite award upon the subject matter was not made?

(Punctuation omitted.) *Southern Communications Svcs*, supra at 1360 (II) (C). Given our determination in Division 2, supra, "[t]he answer to that question is no." Id. The superior court's vacatur of the arbitrator's award must be reversed.

4. Berger argues that the superior court erred in ordering a rehearing on the issue of Welsh's arbitration-related attorney fees and expenses. We agree.

15

In ordering the rehearing, the superior court relied upon OCGA § 9-9-13 (e), which provides that "*[u]pon vacating an award*, the court may order a rehearing and determination of all or any of the issues[.]" (Emphasis supplied.) Given our reversal of the superior court's vacatur of the underlying award, as outlined in Divisions 2 and 3, the lower court's basis for ordering a rehearing no longer exists.

5. Finally, Berger contends that the superior court erred in denying his motion to confirm the arbitration award. We agree.

The GAC provides that a reviewing court "shall confirm an award upon application of a party made within one year after its delivery to [the party], unless the award is vacated or modified by the court as provided in [the GAC]." OCGA § 9-9-12. Likewise, the FAA at 9 USC § 9 mandates that a reviewing court "must grant" an application to confirm an arbitrator's award unless the award is vacated as prescribed in 9 USC § 10. *Brookfield I* at 618-619 (1). "There is nothing malleable about 'must grant[.]'" (Citation and punctuation omitted.) Id. at 619 (1).

Berger moved to confirm the award within the relevant time frame under both statutes. Given our determinations in Divisions 2 - 4, supra, we find that the superior court erred in denying the motion to confirm the award.

*Judgment reversed and case remanded with instruction. Barnes, P. J., and Miller, J., concur.*

16