**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 23, 2022**

# In the Court of Appeals of Georgia

A21A1643.  MAGNUM  CONTRACTING,  LLC,  ET  AL.  v. CENTURY COMMUNITIES OF GEORGIA, LLC

PINSON, Judge.

A contractor and subcontractor were sued after their construction project caused environmental damage to adjacent property. When the subcontractor declined to defend or indemnify the contractor, the contractor brought the subcontractor to arbitration. The arbitration panel denied the contractor's claims, but a trial court vacated the award, finding that the panel failed to address the contractor's duty-to-defend claim, and that it should have allocated fault among the parties and awarded damages to the contractor based on that allocation.

We now reverse. A trial court's authority to vacate an arbitration award is severely limited by statute, and the record here does not show that either of the asserted grounds for vacatur—sufficiently "imperfect execution" of authority or "manifest disregard of the law"—apply. The panel here was able to issue a complete award on the issues presented without separately addressing the duty to defend or allocating fault between the parties. And the parties have made no showing that the panel made a deliberate choice to disregard law that it knew was correct.

**Background**

The underlying dispute in this matter arose out of work done on a real estate development in Gwinnett County known as the Preserve at Addison Woods. In broad terms, the project was to turn an undeveloped 26-acre wooded parcel into a residential subdivision. Century Communities of Georgia, LLC, was the general contractor on the project. Century hired Magnum Contracting, LLC as a subcontractor to install and maintain erosion-control best management practices, clear timber and debris, install sewers, and perform final land grading on the project.

Century and Magnum memorialized their relationship in a subcontractor agreement. Relevant here, the subcontractor agreement stated that Magnum would "defend, indemnify and hold Contractor harmless from" claims, damages, and costs

2

arising from Magnum's actions. The relevant language of that article, titled "INDEMNIFICATION," read as follows:

ARTICLE 14: INDEMNIFICATION

14.1 Subcontractor, its officers and directors, both corporately and personally, shall defend, indemnify and hold Contractor harmless from any and all actions, claims, costs, expenses, fines, fees, interest, attorney's fees and costs, legal or arbitration fees and costs, court costs, liability damages and losses arising from act, action or omission by Subcontractor, Subcontractor[']s sub-subcontractors, laborers, vendors, or others including, but not limited to:

a. any personal injury (or death) or damage of any property arising out of or in any way connected with any act or omission by Subcontractor, whether intentional or accidental . . . while at the Work Site or in the execution or completion of the Work;

[ . . . ]

e. complying with all laws, ordinances and building codes;

[ . . . ]

g. damage to property or Work of others, including but not limited to curbs, sidewalks, driveways, trees, utilities and erosion control systems and materials;

3

h. Subcontractor['s] failure to adhere to or comply with any NPDES laws, ordinances or standards or damages caused by Subcontractor to an NPDES;[1]

[ . . . ]

j. performance of Warranty as herein defined;

k. Subcontractor's failure to adhere to or comply with any clause in this Subcontractor Agreement.

The agreement also included a mandatory arbitration clause for any controversy or claim arising out of the agreement, and it gave Century the right to recover attorney fees and costs from Magnum if Century prevailed in any such arbitration or litigation. The agreement was expressly governed by Georgia law.

About a year after work on the project began, Century, Magnum, and related parties were sued by the owners of adjacent land, the Bowens. The Bowens alleged that defendants' failure to install proper detention ponds and other erosion control mechanisms caused water, silt, pollutants, and other runoff from the project site to

---

[1] NPDES refers to the National Pollutant Discharge Elimination System, a program created under the Clean Water Act of 1972, which authorizes state governments to administer aspects of that Act. See generally 33 USC § 1342.

inundate two lakes on the Bowens' property. The lawsuit alleged fault by the defendants collectively and also by both Magnum and Century individually. As to Magnum, the complaint asserted that "Magnum wrongfully began the mass grading of the CCG Property before the erosion control plan had been fully implemented," and that as a result, "the meticulously maintained lakes on the Bowen Property became the dumping grounds for all of the silt and other pollutants Defendant [Century] discharged from its property."

Century sent two letters to Magnum demanding "immediate defense and indemnification" in the Bowens' lawsuit. Magnum declined the requests. Century then served a demand for arbitration on Magnum. The demand asserted six claims for relief, two of which are relevant to this appeal: (1) a claim for breach of contractual duty to indemnify, which alleged that Magnum "failed to indemnify and/or refused to indemnify and hold [Century] harmless" against the Bowens' claims; and (2) a claim for breach of contractual duty to defend, which alleged that Magnum "failed and/or refused to defend [Century]" against the Bowens' claims. For relief, the demand sought "compensatory damages, actual damages, cost of suit, fees of experts, investigation costs, including engineering and construction expert fees, [and] attorney fees."

Before the arbitration hearing, Century and Magnum separately settled with the Bowens for $1,425,000 and $150,000, respectively. Century then made clear that its claim for damages against Magnum was $1,353,750, representing 95 percent of the settlement Century had paid out.

At the arbitration hearing, Century presented evidence that Magnum had not defended it in the Bowens' lawsuit, including correspondence in which Century asked Magnum to defend it and evidence that Magnum declined or did not respond. Separately, before opening statements and again after the close of evidence, the parties agreed the main hearing would not cover the issue of attorney fees; rather, there would be an "interim award" on the merits and then, if necessary, "a subsequent . . . presentation of the costs for the prevailing party and then the attorney fees." The arbitration panel clarified that only Century, not Magnum, was claiming attorney fees. As a result, the panel told the parties that if, after considering the merits, it found attorney fees were warranted—that is, if Century prevailed and was entitled to fees—then the parties could address that issue in a later proceeding. If the panel did not believe attorney fees should be awarded, it would simply issue a final award.

Two months later, the panel issued its award in favor of Magnum. The panel concluded that the indemnification clause in the subcontractor agreement was

6

"enforceable to the extent damages are attributable to Magnum's negligence." According to the panel, this meant that "to the extent the parties share responsibility for the runoff issues that resulted in the Bowen Lawsuit, it is necessary to allocate responsibility between the parties." The panel noted that the allocation would have been done by a trier of fact in the Bowens' lawsuit, but the parties had settled before it could happen.

In the absence of a prior allocation of fault, the panel reviewed the evidence pointing to each party's responsibility. The panel also did not allocate fault. But it did find that "[t]he expert testimony presented by Century allocating nearly all responsibility to Magnum for erosion and runoff issues is not supported by the evidence," and that the "facts indicate matters beyond Magnum's control were more causally connected to the damages claimed and settled in the Bowen Lawsuit." The panel further found that Century had not met its burdens of showing that its settlement amount of $1,425,000 with the Bowens was reasonable, or that Magnum was responsible for 95 percent of the damages the settlement covered. Based on these findings, the panel concluded that "[t]he balance of all the evidence was not sufficient to enable this panel to reach [Century's] requested conclusion," and denied Century's claims in full.

7

Century then filed an application with the superior court to vacate the arbitration award, and the court vacated the award. The court found statutory grounds for vacatur in two of the arbitration panel's actions: failing to further address Century's duty-to-defend claim beyond recognizing that the duty existed, and failing to apportion fault between the parties and then determine what damages should be attributed to Magnum. Magnum appealed.

**Discussion**

A. Legal Standards

On appeal of a trial court's order to vacate an arbitration award, we review questions of law de novo and review the trial court's findings of fact for clear error. *Wells v. Wells-Wilson*, 360 Ga. App. 646, 647–48 (860 SE2d 185) (2021).

The scope of a court's review of an arbitration award is "among the narrowest known to the law." *Berger v. Welsh*, 326 Ga. App. 290, 291 (1) (756 SE2d 545) (2014) (punction omitted). Under the Arbitration Code, the grounds for vacating an arbitration award are "severely limited." *Adventure Motorsports Reinsurance, Ltd. v. Interstate Natl. Dealer Servs.*, ___ Ga. ___ (1) (Case No. S21G0008, decided December 14, 2021). The Code sets out five exclusive grounds for vacating an award:

(1) Corruption, fraud, or misconduct in procuring the award;

(2) Partiality of an arbitrator appointed as a neutral;

(3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made;

(4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or

(5) The arbitrator's manifest disregard of the law.

OCGA § 9-9-13 (b); see *A&M Hospitalities, LLC v. Alimchandani*, 359 Ga. App. 271, __ (3) (856 SE2d 704) (2021). "Unless one of the statutory grounds for vacating an award as set forth in OCGA § 9-9-13 (b) is found to exist, a trial court in reviewing an award is bound to confirm it." *Adventure Motorsports*, ___ Ga. at ___ (1).

Grounds (3) and (5), "imperfect execution" and "manifest disregard of the law," are relevant here.

An arbitrator imperfectly executes its authority under ground (3) when the record shows "a significant failure to fully and clearly address the issues presented." *King v. King*, 354 Ga. App. 19, 25 (2) (b) (840 SE2d 108) (2020) (citation and punctuation omitted). An arbitrator may fail to make a "final and definite award" if

9

it declines to consider a claim or counterclaim that was submitted to it. *Hansen & Hansen Enterprises, Inc. v. SCSJ Enterprises, Inc.*, 299 Ga. App. 469, 473–74 (2) (b) (682 SE2d 652) (2009). Whether such a failure occurred "turns on what the parties' arbitration agreement required of the arbitrator." *King*, 354 Ga. App. at 25 (2) (b). An arbitration award should be consistent with terms of the underlying agreement and reflect the essence of the contract. Id. "Although an arbitrator has some latitude in fashioning remedies, he is not free to ignore the express terms of a valid and enforceable contract." *Sweatt v. Intl. Dev. Corp.*, 242 Ga. App. 753, 755 (1) (531 SE2d 192) (2000).

As for manifest disregard: "To manifestly disregard the law, one must be conscious of the law and deliberately ignore it." *Odion v. Avesis, Inc.*, 355 Ga. App. 598, 606 (2) (d) (845 SE2d 335) (2020) (punctuation omitted). A party claiming that an arbitrator has manifestly disregarded the law therefore must "'provide evidence of record that, not only was the correct law communicated to the arbitrator, but that the arbitrator intentionally and knowingly chose to ignore that law despite the fact that it was correct.'" *Adventure Motorsports*, ___ Ga. at ___ (2); see also *Wells*, 360 Ga. App. at 660 (2) (quoting *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 309 (647 SE2d 574) (2007)). . This showing is an "extremely difficult one to

make." *Adventure Motorsports*, ___ Ga. at ___ (2) (citation and punctuation omitted). It requires "concrete evidence" in the hearing transcript or the written award of a "specific intent" to "disregard the appropriate law" or "not to apply the applicable standard." Id. (citation and punctuation omitted). It is not enough to show the arbitrator incorrectly interpreted the law: "error in law or failure on the part of the arbitrator to understand or apply the law" is not manifest disregard. Id. (cleaned up).

## B. Application

Magnum contends that the trial court erred in finding that the "imperfect execution" and "manifest disregard" grounds for vacatur applied to the panel's treatment of (1) the duty-to-defend claim and (2) allocation of fault. We address each subject in turn.

1. We agree with Magnum that neither asserted ground for vacatur applies to the arbitration panel's treatment of Century's duty-to-defend claim.

(a) The arbitration panel did not imperfectly execute its authority by failing to address Magnum's duty to defend. The panel did not ignore the terms of the subcontractor agreement or refuse to consider Century's claim for breach of duty to defend. See *Atlanta Gas Light Co. v. Trinity Christian Methodist Episcopal Church*, 231 Ga. App. 617, 619 (2) (500 SE2d 374) (1998) (noting that the arbitrator had

11

"inherent power to fashion a remedy as long as the award draws its essence from the contract or statute") (citation omitted). To the contrary, the panel considered the article of the contract that imposed the duty to defend, heard arguments from both sides, and concluded the provision was enforceable "to the extent damages are attributable to Magnum's negligence." The panel then weighed evidence and, finding that Magnum was less than 95 percent responsible for the Bowens' damages, awarded Century nothing. To be sure, a court of law or equity might not have had the same freedom to decline to award damages based on Magnum's duty to defend, which is separate from the duty to indemnify and exists regardless of the degree of Magnum's fault. See *Southern Trust Co. v. Mountain Express Oil. Co.*, 351 Ga. App. 117, 121 (828 SE2d 455) (2019). But the law permits an arbitration panel to issue an award that a court could not. OCGA § 9-9-13 (d); see *A&M Hospitalities*, 359 Ga. App. at ___ (3) (856 SE2d at 710) (explaining that "arbitrators are free to award on the basis of broad principles of fairness and equity"). The award here was permissible because the panel interpreted, but did not ignore, the contract and the claim. See *Berger*, 326 Ga. App. at 294–95 (2) (affirming award that reflected "the essence of the contract" and rejecting argument that award must be vacated because "arbitrator did not correctly interpret the contracts in question"). Compare *King*, 354 Ga. App. at 25–27

12

(2) (b) (arbitrator imperfectly executed authority by declining to issue findings of fact or conclusions of law despite express provision in arbitration agreement requiring it).

In addition, the approach that the arbitration panel took was consistent with the way Century presented its case. See *Berger*, 326 Ga. App. at 294 (2) (arbitrator did not imperfectly execute his authority when he interpreted parties' contracts and determined their applicability, since the parties clearly agreed to allow him to do so). The primary relief Century sought was for Magnum to indemnify it for 95 percent of the settlement amount paid to the Bowens. Based on that requested relief, it was at least reasonable for the panel to understand the case to be focused on indemnification. Century also requested attorney fees, which it now suggests were supposed to be its damages relating to the duty to defend. (As Century puts it, the issue of attorney fees was to be addressed in the second phase of the bifurcated arbitration hearing, which, "if necessary (i.e., if the Panel found that Magnum owed Century a duty to defend and breached it), . . . would [have] concern[ed] the attorneys' fees and costs Century incurred in the Bowen lawsuit.") But there were two types of attorney fees in this case: those that Century incurred to defend itself in the Bowens' lawsuit, and those it incurred in the arbitration against Magnum. The former type could be seen as Century's damages relating to the breach of the duty to defend. But by requesting

13

relief that consisted of, essentially, a 95 percent indemnification plus attorney fees if it prevailed, Century invited the panel to view the attorney fees in the latter way: as an award that simply would have allowed the prevailing party to recoup the costs spent in arbitration. Under that framing of the case, once the panel determined that Century did not prevail on the merits, its mandate did not require it to reach the question of attorney fees.

(b) The panel's treatment of the duty-to-defend claim also did not manifestly disregard the law. Century identified no evidence that the arbitrator intentionally disregarded law relevant to the duty to defend. *Adventure Motorsports*, ___ Ga. at ___ (2). The arbitration panel may well have failed to recognize that the contract's duty to defend was separate from the duty to indemnify. See *Southern Trust Ins. Co.*, 351 Ga. App. at 121. But Century has not pointed to any evidence that the panel knew this and deliberately disregarded it. At most, the panel incorrectly interpreted the law by finding that the indemnity provision in the parties' subcontractor agreement was enforceable only "to the extent damages are attributable to Magnum's negligence." But an incorrect interpretation of the law is not manifest disregard. *Adventure Motorsports*, ___ Ga. at ___ (2) (cleaned up); *A&M Hospitalities*, 359 Ga. App. at ___ (3) (856 SE2d at 711).

14

2. We also agree with Magnum that neither asserted ground for vacatur applies to the arbitration panel's treatment of fault allocation or damages.

(a) The panel's decision to not allocate fault did not amount to a failure to issue a final and definite award upon the matter submitted. OCGA § 9-9-13 (b) (3). The panel's final and definite award was that Century deserved nothing from Magnum. That award was based on the panel's findings that (1) Magnum's share of the blame for the Bowens' damages was less than the 95 percent that Century claimed, and (2) Century did not show that its settlement payment to the Bowens was for a reasonable amount. Those were rational things for the panel to consider, since they were the bases for Century's damages claim. See, e.g., *A&M Hospitalities*, 359 Ga. App. at ___ (3) (856 SE2d at 710) ("arbitrators are free to award on the basis of broad principles of fairness and equity"). And the panel's reasoning did not necessarily flout or ignore the panel's conclusion that the parties' indemnification clause was "enforceable to the extent damages are attributable to Magnum's negligence." Century *could* have asked for an award in an amount to be determined by the panel, based on the panel's assessment of Magnum's degree of fault. Century did not do that. Instead, Century asked for a 95 percent indemnification. The panel may have reasoned that Century had made the award an all-or-nothing proposition, and that an

15

allocation of fault was not called for because Century had not asked for that in the alternative. Under settled law governing arbitration, the panel was free to do that. See id.

(b) We likewise cannot conclude that the panel manifestly disregarded the law by failing to allocate fault between the parties. Century fails to cite any legal rule that the panel ignored by failing to allocate fault, much less record evidence that it did so intentionally and knowingly. *Adventure Motorsports*, ___ Ga. at ___ (2) (cleaned up); *Wells*, 360 Ga. App. at 660 (2).

\*

As we noted above, the panel's award in this case likely could not have been issued by a court of law or equity. But that is not reason enough to vacate it. OCGA § 9-9-13 (d). Absent a showing that one of the "severely limited" statutory grounds for vacatur exists, an arbitration award must stand. And Century hasn't made any such showing here. We cannot say the panel "significant[ly] fail[ed] to fully and clearly address the issues presented," *King*, 354 Ga. App. at 25 (2) (b), wholly declined to consider a claim or counterclaim, *Hansen & Hansen*, 299 Ga. App. at 473–74 (2) (b), "ignore[d] the express terms of a valid and enforceable contract," *Sweatt*, 242 Ga. App. at 755 (1), or intentionally and knowingly ignored a provision

16

of law it knew to be correct. *Adventure Motorsports*, ___ Ga. at ___ (2) (cleaned up).

We therefore reverse the trial court's order vacating the arbitration panel award.

*Judgment reversed. Dillard, P. J., and Mercier, J., concur*.